686 A.2d 1355

**Edward C. FOGG, Individually and as Personal Representative of the Estate of Edward H. Fogg, Appellee,**

**v.**

**PAOLI MEMORIAL HOSPITAL, Paoli Memorial Corp., a/k/a Main Line Corp, Mellon Stuart, Mirick Pearson Batcheler, Paoli Memorial Medical Bldg. Corp. a/k/a Properties Corporation of Paoli.**

**Appeal of PAOLI MEMORIAL HOSPITAL, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 1996.

Filed Dec. 31, 1996.

L. Rostaing Tharaud, Philadelphia, for appellant.

Stephen M. Long, Lionville, for appellee.

Before CIRILLO, DEL SOLE and OLSZEWSKI, JJ.

DEL SOLE, Judge:

This is an appeal from the judgment entered in favor of Appellee in the amount of $442,000 in accordance with a jury verdict, and following the denial of post-trial motions. Appel-

lant, Paoli Memorial Hospital, makes a number of claims on appeal, each of which we find to be without merit. Accordingly, we affirm.

The tragic facts which underlie this matter were carefully summarized by the trial court:

On April 21, 1985, the Plaintiff–Decedent, Edward H. Fogg, a man with a history of psychiatric problems, was alone in his parent's home when he began experiencing mental distress. During the course of the day, he and his parents who came home to find their son in some distress, had five (5) telephone conversations with Dr. John Clayton, his treating psychiatrist. As a result of these conversations, Dr. Clayton arranged for the Plaintiff–Decedent to be admitted to the psychiatric wing of Defendant, Paoli Memorial Hospital, known as '4–West.'

Dr. Clayton telephoned the hospital, and reserved a bed for Plaintiff–Decedent on 4–West. The hospital records indicate Dr. Clayton informed the hospital's psychiatric staff the Plaintiff–Decedent was in a highly agitated state, and was experiencing intense anxiety, depression, homicidal ideation and visual/audio hallucinations. Dr. Clayton instructed Plaintiff–Decedent's parents, Edward C. Fogg and Elaine Fogg, to take Plaintiff–Decedent to the Emergency Room of the hospital.

Upon arrival at the Emergency Room, Mr. and Mrs. Fogg informed the registrar that their son was hallucinating. The Foggs informed the registrar that their son had a bed reserved for his admission on 4–West. The family was asked to have a seat in the waiting room. During their wait in the Emergency Room, Plaintiff–Decedent did not receive any medical treatment, and was not seen by any medical personnel.

Plaintiff–Decedent began pacing in the waiting room, and his parents repeatedly requested the registrar to have someone from the Emergency Room see their son. Finally after approximately thirty-five (35) minutes, the registrar directed the Foggs to the admissions desk of the hospital. She gave the Foggs directions to the desk, which required

the Foggs to leave the waiting room and walk down a hallway. The Foggs were not offered an escort, and left down the hallway unsupervised.

On the day of the accident, the hallway between the Emergency Room and the main portion of the hospital was under construction. There were no signs directing the Foggs to the admissions desk. At the end of the hallway was a large window, facing West. As they walked down the hallway the sun was setting, shining in the Foggs' faces.

At this point, Plaintiff–Decedent became more agitated and began running down the hallway towards the setting sun. His parents were unable to keep up with him. When Plaintiff–Decedent reached the end of the hallway, he crashed through the window and fell two (2) stories to a concrete driveway. Mr. and Mrs. Fogg witnessed their son crash through the window. [E]mergency personnel were dispatched to render aid to Plaintiff–Decedent, and he was admitted to the hospital's Intensive Care Unit. Plaintiff–Decedent died from his injuries April 22, 1985.

Trial Court Opinion at 1–3.

In its first issue Appellant asserts that the court incorrectly charged the jury with regard to duty. Appellant recounts that it requested the trial court to instruct the jury that the duty of the defendant to the plaintiff under the circumstances, was that of a property owner to a business invitee. It notes that the court rejected this request and stated that it was going to instruct the jury according to a theory of general negligence. Appellant then states, "Absent from the court's instructions is any reference to duty of any kind." Brief for Appellant at 10. Appellant argues that absent such specific direction the jury was "allowed to find liability based upon standards of care set out in the testimony of plaintiff's expert witnesses." Brief of Appellant at 13.

The transcript of the jury charge and the discussion which follows between Appellant's counsel and the court leads us to conclude that Appellant has waived this specific claim. The court did charge the jury on negligence generally. Appel-

lant did not object to this instruction as being incomplete or insufficient with regard to an explanation of duty. Among the exceptions to the court's charge made by Appellant was its reaffirmance of its position that the jury should be instructed that Mr. Fogg was a business invitee. The court explained that this theory did not apply under the facts of this case and that the matter was better handled under the traditional negligence concept. N.T. 5/25/95 at 971.

Appellant never asked the court to supplement the general negligence instruction given to more fully define the term "duty of care". If so requested the court would have had an opportunity to correct any omissions Appellant believed existed. Appellant cannot now for the first time complain that the instruction as given was not complete.

Appellant next argues that it was entitled to limited immunity under the Mental Health and Procedures Act, (MHPA), 50 P.S. § 7114. The trial court ruled that the immunity provisions of the MHPA did not apply in this case because the Appellant-hospital had not been "treating" Mr. Fogg for his mental illness at the time of his injury. We agree with this conclusion.

Section 7114 of the MHPA provides:

(a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged or placed under partial hospitalization, outpatient care of leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or involuntary emergency examination shall not be liable for such decision or for any of its consequences.

50 P.S. § 7114(a).

In *McNamara v. Schleifer Ambulance Serv.,* 383 Pa.Super. 100, 556 A.2d 448 (1989) an action was brought on behalf of a patient who was injured when he jumped through rear doors

of a moving ambulance which was transferring him from one hospital to a state hospital to receive court-ordered involuntary treatment. The court ruled that the ambulance service was not clothed with immunity. It found that immunity under 7114 of the MHPA is granted in the context of treatment decisions to those trained in the field of mental health. The decision making process referred to in 7114 was found to be one "which would take place within the context of treatment, care, diagnosis or rehabilitation." *Id.* at 103, 556 A.2d at 449.

In this case the trial court correctly noted that Mr. Fogg was not yet being treated by Appellant at the time of his injuries. Although he presented himself for treatment at the emergency room, he was not examined or treated by any hospital personal while in the emergency room, and no decisions regarding his care or treatment were made while Mr. Fogg was at Appellant's facility. Since no one from Appellant-hospital who was trained in the field of mental health was treating Appellant or making decisions regarding his treatment at the time of the accident, Appellant cannot avail itself of the immunity protections of the MHPA.

 Appellant next asks whether the trial court erred in admitting the testimony of Appellee's experts, Dr. Lawrence E. Miller and Mr. William Nellis. Dr. Miller testified as an expert in the field of psychiatric care and emergency care. Mr. Nellis was questioned about his expertise in the field of hospital administration. These two men set forth their educational background and extensive work history before the court. Although Appellant makes specific challenges to each regarding the extent of their experience and the fact that the experiences may have been at larger institutions, Appellant was free, as the trial court points out, to cross examine these witnesses on these matters. Because the standard of qualification is a liberal one which allows a witness with any reasonable pretension to specialized knowledge on the subject to testify, *Kuisis v. Baldwin–Lima–Hamilton Corp.*, 457 Pa. 321, 319 A.2d 914 (1974), we find no error in the court's ruling. It was for the jury to accept or reject this testimony and to

determine the weight which would ultimately be placed on this evidence.

■ Another claim of error raised by Appellant concerns the court's charge to the jury on damages for pain and suffering. Appellant argues that because the decedent was unconscious following his jump or fall through the window, the jury should not have been allowed to consider damages for pain and suffering. He asserts that the record is devoid of any evidence which would support a finding from a jury that Mr. Fogg was conscious at the time he hit the window or after.

The record belies Appellant's claim. During the direct examination of Edward C. Fogg he was asked to describe what he observed after his son went through the window. Mr. Fogg relayed that he ran down steps to ground level and then "went out the door and he was groaning and moaning and he had a—losing a lot of blood." N.T. 5/21/95 at 621. In light of this testimony there was evidence from which a jury could determine that Mr. Fogg was conscious so as to suffer pain. Under these circumstances the jury charge given by the court, which instructed them to "ask yourself whether the evidence satisfies you as to whether he was or was not conscious for what period of time." N.T. 5/25/95 at 956, was entirely appropriate.

Lastly, Appellant argues that the verdict of the jury contradicted the weight of the evidence. Appellant asserts that there was no testimony of record which would establish that it could have predicted and thereby prevented Mr. Fogg's impulsive behavior.

■ A new trial will not be granted on the basis of a weight of the evidence claim unless the evidence supporting the verdict is so inherently improbable or at variance with admitted or proven facts or with ordinary experience as to render the verdict shocking to the court's sense of justice. This court will reverse the action of the trial court only if it determines that it acted capriciously or palpably abused its

discretion. *Brindley v. Woodland Village Restaurant,* 438 Pa.Super. 385, 652 A.2d 865 (1995).

■ There is nothing in the record before us which would cause us to disturb the trial court's ruling with regard to this claim. Appellee offered evidence to demonstrate that the hospital was insufficiently staffed, that it failed to properly assess and diagnose Mr. Fogg when he presented himself at their facility and that the hospital failed to provide a safe and properly monitored means of access for Mr. Fogg's admission to the hospital. This testimony, if believed by the jury, supports its ultimate ruling, which cannot be said to shock this court's sense of justice. For these reasons, we affirm the judgment in favor of Appellee.

Judgment affirmed.