**GIANT FOOD STORES, LLC, Appellee**

v.

**THF SILVER SPRING
DEVELOPMENT,
L.P., Appellant.**

Superior Court of Pennsylvania.

Argued April 29, 2008.
Filed Oct. 17, 2008.

Mark E. Lovett, Lancaster, for appellant.

Bradley A. Winters, St. Louis, MI, for THF, appellee.

Helen L. Gemmill, Harrisburg, for Giant Food, appellee.

BEFORE: LALLY–GREEN, SHOGAN and COLVILLE *, JJ.

OPINION BY SHOGAN, J.:

¶ 1 Appellant, THF Silver Spring Development, L.P., the owner of a shopping center, appeals from the order that granted summary judgment in favor of Appellee, Giant Food Stores, LLC, in this action in equity and that enjoined Appellant from violating a Supermarket Restriction contained in a 1992 Lease Agreement. We affirm.

¶ 2 The trial court summarized the facts of this case as follows:

[Appellant's] predecessor in interest developed the Silver Spring Commons Shopping Center (hereinafter Shopping Center). In May 1992[,] the parties' predecessors in interest entered into a 20[-]year lease agreement for certain retail space in the Shopping Center. [Appellee's] predecessor in interest operated a Giant grocery store from that space. The lease agreement contained a restrictive covenant which provides[,] in relevant part[,] as follows:

**Section 14.01.**

... Landlord covenants and agrees that, for the term of this Lease and any extension thereof, no store(s) and/or building(s), or any part of same, now or hereafter acquired and/or constructed by Landlord within the Shopping Center or upon any property within a three (3) mile distance therefrom in which the Landlord has an ownership interest shall be used for the sale (at retail or wholesale), for off-premises consumption of groceries, ... If at any time during the term hereof the Demised Premises is not being used as a supermarket or for the sale of food for a consecutive period in excess of six (6) months ... the restrictions contained herein shall be null and void.

In April of 2001[,] Giant vacated the leased space and moved its grocery store to an unrelated retail space across the highway from the Shopping Center. However, before its move, Giant began negotiating with [Appellant's] predecessor to sublet a portion of its space in the Shopping Center and to maintain the effectiveness of the restrictive covenant set forth above. At the same time[,] [Appellant's] predecessor in interest was negotiating with Wal–Mart to expand its presence in the Shopping Center from a

---

* Retired Senior Judge assigned to the Superior Court.

Wal–Mart retail store to a Wal–Mart Super Center, which would include the sale of groceries. By June of that year[,] the parties confirmed their intention to proceed in good faith to reach a legally binding agreement which would incorporate the following terms:

> In consideration of the Tenant's funding of the improvements to be constructed by Marshalls, Landlord shall waive the nullification of the use restrictions by virtue of Tenant's discontinuance of supermarket operation, and shall agree that the use restrictions contained in Section 14.01 (the "Supermarket Restriction") shall be reinstated and thereafter would expire on the expiration date of the original term of the Lease. This waiver by Landlord will take effect when the Sublease is approved by Landlord and executed by Tenant as sub landlord and Marshalls as subtenant. Notwithstanding the foregoing, the Supermarket Restriction (a) shall not apply to Wal–Mart Stores, Inc. and its successors and assigns.

> \* \* \*

> Tenant will approve in writing (a) Wal–Mart's operation of a supermarket, (b) the expansion of the Wal–Mart store into a portion of the shopping center owned by Landlord, approximately as shown on the Sketch Plan attached hereto as Schedule B. The result will be that the Wal–Mart store will be expanded to contain approximately 200,000 square feet of space, some of which, as determined by Wal–Mart, will be devoted to supermarket type uses; and (c) the expansion of that portion of the overall shopping center now owned by Wal–Mart . . .

By September of 2001[,] the parties entered into a legally binding agreement with regard to the sublease and the Wal–Mart expansion. [Appellant's] predecessor agreed to execute Giant's sublease for the purpose of consenting thereto. With regard to the Wal–Mart expansion, the agreement provided, *inter alia,* as follows:

> Giant and Marmaxx hereby confirm and reconfirm that they have no objections to, and hereby consent to and approve (a) the conveyance of approximately 4.56 acres of land and improvements thereon to Wal–Mart, all as approximately shown in the shaded area on Exhibit A attached hereto, . . . **(b) the construction by Wal–Mart of an expansion to the existing Wal–Mart store, the expansion to take place approximately within the area crosshatched within the shaded area and (c) the operation by Wal–Mart of its store, as so expanded, as a: "Wal-[m]art Super[center]";**

(emphasis added).

In July of 2003[,] Giant subleased the remaining portion of its space in the shopping center. In September of that year, the parties finally executed an Amendment to the original lease agreement. The document began by reciting the following background:

A. Landlord is the fee owner of certain real property that comprises a portion of the Silver Spring Commons Center, located in Silver Spring Township, Cumberland County, Pennsylvania, as depicted on the Site Plan attached hereto as Exhibit "A" (the "Shopping Center").

B. Landlord's predecessor in interest and Tenant's predecessor in interest entered into a Lease

Agreement dated May 29, [ ] 1992 (the "Lease"), pursuant to which Tenant leases certain premises located in the Shopping Center (the "Demised Premises") as described in the Lease . . .

C. Tenant elected to discontinue the operation of the Demised Premises as a supermarket pursuant to its rights set forth in Section 6.02 of the Lease, and ceased operations in the Demised Premises on or about April 24, 2001.

D. Section 14.01 of the Lease sets forth a use restriction binding the Shopping Center and certain other property within a three (3) mile distance therefrom (the "Supermarket Restriction"), which shall become null and void if the Demised Premises are not being used as a supermarket or for the sale of food for a consecutive period in excess of six (6) months, excluding any Excused Period.

E. Tenant, as sublessor, and Marmaxx Operating Corp. ("Marmaxx"), as sublessee, entered into a Sublease Agreement dated as of September 20, 2001 (the "Marmaxx Sublease"), pursuant to which Marmaxx occupies a portion of the Demised Premises, which portion is marked "Marmaxx Space" on Exhibit "A" hereto.

F. Tenant, as sublessor, and A.C. Moore, Inc. ("A.C. Moore"), as sublessee, entered into a Sublease Agreement dated as of July 1, 2003 (the "A.C. Moore Sublease") pursuant to which A.C. Moore occupies the remainder of the Demised Premises, which remainder is marked "A.C. Moore Space" on Exhibit "A" hereto.

G. **Wal–Mart Stores, Inc. ("Wal–Mart") is the fee owner of certain real property that comprises a portion of the Shopping Center (the "Wal–Mart Property") as depicted on Exhibit "A" hereto.**

H. Landlord and Tenant desire to amend the Lease in accordance with the provisions set forth herein.

(emphasis added). The relevant terms of the amendment provide as follows:

3. *Subleases.* Landlord and Tenant agree that from and after the Expiration Date, Tenant shall have no further rights, duties or obligations under the Marmaxx Sublease or the A.C. Moore Sublease, except for any right, duties or obligations accruing before the Expiration Date.

4. *Supermarket Restriction.* Landlord and Tenant agree that, effective upon the execution of the Marmaxx Sublease on or about September 20, 2001, Section 14.01 of the Lease shall have been amended to provide that, whether or not the Demised Premises is operated as a supermarket or for the sale of food, the Supermarket Restriction shall remain in full force and effect throughout the original term or the Lease . . .

5. *Wal–Mart.* **Notwithstanding anything to the contrary contained herein or in the Lease, the Supermarket Restriction shall not apply to Wal–Mart, its successors or assigns.**

(emphasis added).

[Appellant] purchased the Shopping Center in January 2005. In April of 2006[,] it filed an application for a conditional use to construct a Sam's Club retail facility in a portion of the Shopping Center not occupied by Wal–Mart.

Sam's Club is owned by Sam's Club East, Inc. Its retail facilities sell groceries. Since Sam's Club East, Inc. is a subsidiary of Wal–Mart, defendant intends to lease the space to Wal–Mart which will in turn "assign" it to Sam's Club East.

Trial Court Opinion, 8/03/07, at 1–5 (footnotes omitted).

¶ 3 On June 28, 2006, Appellee filed this action in equity seeking a permanent injunction to enjoin Appellant from leasing retail space to Sam's Club or any other store that will sell groceries for off-premises consumption. The parties filed cross motions for summary judgment. On August 3, 2007, the trial court granted Appellee's motion for summary judgment and enjoined Appellant from violating the Supermarket Restriction. Appellant filed its timely notice of appeal on August 23, 2007. On September 4, 2007, the trial court ordered Appellant to file a concise statement pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). Appellant filed its concise statement on September 10, 2007.

¶ 4 Appellant raises the following issues for our review:

1. Whether the trial court erred in construing documents executed prior to the First Amendment to Lease as being part of the First Amendment to Lease?

2. Whether the trial court erred in interpreting the First Amendment to Lease by rendering an interpretation that nullifies the defined term therein of "Wal–Mart"?

3. Whether the trial court erred in ruling that the "intent of the parties" differed from the "clear and unequivocal" terms of the First Amendment to Lease?

4. Whether the trial court erred in modifying and reforming the restrictive covenant—effectively, by substituting the defined term "Wal–Mart Property" for the parties' clear use of "WalMart"—when the contractual language was unambiguous and neither party sought reformation as a remedy?

Appellant's Brief at 1–2.[1]

 ¶ 5 Our standard for reviewing a trial court's grant of summary judgment is well-established: "[W]e view the record in the light most favorable to the non-moving party and resolve all doubts as to the existence of a genuine issue of material fact in its favor." *Juniata Valley Bank v. Martin Oil Co.*, 736 A.2d 650, 655 (Pa.Super.1999).

[A] non-moving party must adduce sufficient evidence on an issue essential to his case and on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

---

1. At the outset, we must comment on the fact that Appellant's brief to this Court is not in conformance with many of the briefing requirements set forth in the Pennsylvania Rules of Appellate Procedure. *See* Pa.R.A.P. Chapter 21. For example, Appellant's "Statement of the Questions Involved" "must never exceed one page and must always be on a separate page, without any other matter appearing thereon." *See* Pa.R.A.P. 2116. Instantly the presentation of the Statement violates Rule 2116 because it is split over two pages and is preceded and followed by other material. *See* Appellant's Brief at 1–2. When a party's brief fails to conform to the Rules of Appellate Procedure and the defects are substantial, this Court may, in its discretion, quash or dismiss the appeal pursuant to Rule 2101. *See* Pa.R.A.P. 2101. While the defects in Appellant's brief are too numerous to set forth here, and could warrant dismissal of the appeal, we decline to do so in this instance.

*Checchio v. Frankford Hospital–Torres-dale Div.*, 717 A.2d 1058, 1059 (Pa.Super.1998), appeal denied, 566 Pa. 633, 781 A.2d 137 (2001) (quoting *Ertel v. Patriot–News Co.*, 544 Pa. 93, 101–102, 674 A.2d 1038, 1042 (1996)).

¶ 6 In its first issue, Appellant argues that the trial court improperly considered parol evidence in interpreting the language of the First Amendment to the Lease Agreement. Appellant contends that the trial court erred when it considered any documents beyond the Lease Agreement and the First Amendment. Specifically, in a two-pronged argument, Appellant initially claims that the trial court incorrectly relied upon a "site plan," which had been attached as "Exhibit A" to the First Amendment. Appellant secondly contends that the trial court erred in considering the two Letter Agreements entered into by the parties. We will address these issues in turn.

■ ¶ 7 Appellant begins with a claim that the trial court erred in relying upon the "site plan" marked as "Exhibit A" and attached to the First Amendment. However, Appellant cites no legal authority to support the claim that a document, referenced by a contract and attached to the contract as an exhibit, is actually parol evidence and should not have been considered by the trial court in evaluating the language of the contract.

■ ¶ 8 "The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority." *Estate of Haiko v. McGinley*, 799 A.2d 155, 161 (Pa.Super.2002); Pa. R.A.P. 2119(b). Failure to do so constitutes waiver of the claim. *See Estate of*

*Haiko*, 799 A.2d at 161 (deeming issue waived for failure to include reasoned discussion of the law against which to adjudge the appellant's claims). Accordingly, Appellant's issue on appeal is waived because it has failed to set forth in its appellate brief any citation to legal authority pertaining to this argument.

■ ¶ 9 Appellant next argues that the trial court erred in failing to limit its review of the contracts to the Lease Agreement and subsequent First Amendment.[2] Appellant contends that the trial court erred in considering the intervening Letter Agreements in determining the intent of the parties with regard to the Supermarket Restriction. Appellant asserts that the Letter Agreements are incompetent under the parol evidence rule.

■ ¶ 10 In *Yocca v. Pittsburgh Steelers Sports, Inc.*, 578 Pa. 479, 854 A.2d 425 (2004), our Supreme Court provided the following comprehensive review of the parol evidence rule:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement.... [U]nless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.

Therefore, for the parol evidence rule to apply, there must be a writing that represents the "entire contract between the parties." To determine whether or not a writing is the parties' entire contract, the writing must be looked at and "if it appears to be a contract complete within

---

**2.** As discussed in more detail *infra*, the parties executed the following four documents, in chronological order: the Lease Agreement, the First Letter Agreement, the Second Letter Agreement, and the First Amendment.

itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties...." An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution.

Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract.

*Id.* at 497–498, 854 A.2d at 436–437 (citations omitted). "Only where a contract's language is ambiguous may extrinsic or parol evidence be considered to determine the intent of the parties." *Ferrer v. Trustees of the University of Pennsylvania,* 573 Pa. 310, 339, 825 A.2d 591, 608 (2002) (citation omitted).

¶ 11 Moreover, we have long stated that "[w]here several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." *Huegel v. Mifflin Construction Co.,* 796 A.2d 350, 354–355 (Pa.Super.2002) (quoting *Neville v. Scott,* 182 Pa.Super. 448, 127 A.2d 755, 757 (1957)).

¶ 12 Our review of the record reflects that the parties executed the following four documents of significance: the Lease Agreement (dated May 29, 1992), the First Letter Agreement (dated June 27, 2001), the Second Letter Agreement (dated September 20, 2001), and the First Amendment (dated September 9, 2003). Appellant would have us consider only the Lease Agreement and the First Amendment in determining the intent of the parties and ignore the intervening First and Second Letter Agreements signed by the parties as parol evidence. However, upon review, we conclude that the First Letter Agreement and the Second Letter Agreement are not parol evidence.

¶ 13 The Lease Agreement, although integrated at the time it was executed in 1992, contains in its integration clause, a provision specifying that modification of the Lease Agreement is permissible when done so in writing that is executed by both parties. Lease Agreement, § 39.01. Thus, the original Lease Agreement allows for written and signed modifications to its provisions.

¶ 14 In June 2001, nine years after the inception of the Lease Agreement, the parties executed the First Letter Agreement in response to Appellee ceasing operation of the supermarket at the Shopping Center. The First Letter Agreement demonstrates the following intent of the parties: Appellee would be permitted to sublet a portion of its space and pay for physical improvements, the restrictive covenant would be maintained, and the Wal–Mart store would be permitted to expand to a "Super Center" and would also be permitted to sell groceries.[3] Moreover, the First

---

**3.** The First Letter Agreement stated that Appellee intended to be legally bound as follows in relation to the expansion of the Wal–Mart store:

2. [Appellee] will approve in writing (a) Wal–Mart's operation of a supermarket, (b) the expansion of the Wal–Mart store into a portion of the shopping center owned by

Letter Agreement indicated that a subsequent modification of the Lease Agreement would be forthcoming. Specifically, the First Letter Agreement provides: "The Lease will be amended so as to modify the provisions of Section 14.01 [relating to Landlord's Covenants] thereof, as contemplated by item A.4 above [pertaining to the Supermarket Restriction], but also to terminate Article 5 thereof—the Renewal Options—such that the Lease will absolutely terminate and end on November 30, 2012, the date of expiration of the original term of the Lease...." First Letter Agreement, at ¶ B.4. Accordingly, the First Letter Agreement contemplated that an amendment to the Lease Agreement would be necessary.

¶ 15 Three months later, the parties acted upon the First Letter Agreement and entered into the Second Letter Agreement, which further addressed the expansion of the Wal–Mart store. The Second Letter Agreement provided the following:

1. Giant and Marmaxx hereby confirm and reconfirm that they have no objections to, and hereby consent to and approve (a) the conveyance of approximately 4.56 acres of land and improvements thereon to Wal–Mart, all as approximately shown in the shaded area on Exhibit A attached hereto, ... (b) the construction by Wal–Mart of an expansion to the existing Wal–Mart store, the expansion to take place ap-

proximately within the area crosshatched within the shaded area and (c) the operation by Wal–Mart of its store, as so expanded, as a "Wal-mart Supercenter" ...

Second Letter Agreement, 9/20/01, at ¶ 1. Likewise, the Second Letter Agreement anticipated that subsequent documents relative to the Agreement would be necessary as evidenced by the following provision:

3. Giant and Marmaxx will execute any other documents reasonably required by [Appellant] and Wal–Mart to reaffirm and evidence the foregoing agreements.

*Id.* at ¶ 3.

■ ¶ 16 Two years later, after Appellee had subleased all of its space, the parties executed the First Amendment, which summarizes the following: the term of the lease, the permission to sublease, the Supermarket Restriction, and the limited exclusion to the Supermarket Restriction. As noted previously in this memorandum, the First Amendment does not contain an independent integration clause which states that it is meant to represent the parties' entire agreement or that it expresses all of the parties' negotiations, conversations, and agreements made prior to its execution. Thus, it cannot be said that the First Amendment represents the entire contract between the parties, which would trigger the application of the parol evidence rule.[4]

---

[Appellant], approximately as shown on the Sketch Plan attached hereto as Schedule B. The result will be that the Wal–Mart store will be expanded to contain approximately 200,000 square feet of space, some of which, as determined by Wal–Mart, will be devoted to supermarket type uses; and (c) the expansion of that portion of the overall shopping center now owned by Wal–Mart....

First Letter Agreement, 6/27/01, at ¶ B.2.

4. We note that Appellant contends that there is an integration clause contained in the

Lease Agreement that has been incorporated by the First Amendment. Specifically, the Lease Agreement contains the following provision:

This instrument contains the entire and only agreement between the parties, and no oral statements or representations or prior written matter not contained in this instrument shall have any force or effect. This Lease shall not be modified in any way except by writing executed by both parties....

¶ 17 Consequently, we are constrained to conclude that, although the four written instruments in question may have been executed at different times and do not in terms refer to each other, the First Letter Agreement, the Second Letter Agreement, and the First Amendment constitute one transaction. In summary, the record reflects that the Lease Agreement provided for future written modifications. The First Letter Agreement, also in writing, set forth the express agreements pertaining to modifications of the Lease Agreement, referenced additional modifications in the future, and contemplated a necessary amendment to the Lease Agreement. Similarly, the Second Letter Agreement, again in writing, addressed modifications to the Lease Agreement and implied that other written documents would be forthcoming. Ultimately, the First Amendment, which does not contain an independent integration clause, summarized and further memorialized the written agreements previously reached by the parties. Accordingly, we conclude it is proper for these written documents to be read together and each construed with reference to the other. Therefore, Appellant's claim that the First and Second Letter Agreements constitute parol evidence fails. Thus, the trial court did not err in considering the documents together in determining the intent of the parties and Appellant's contrary claim lacks merit.[5]

¶ 18 In Appellant's interrelated issues numbered two and three, Appellant argues that the trial court incorrectly determined the intent of the parties in applying the Supermarket Restriction. Basically, Appellant argues that the trial court wrongly concluded that the only exception to the Supermarket Restriction at issue was for the land occupied by Wal–Mart as specified in the site plan attached to the First Amendment. Appellant asserts that this interpretation nullifies the clear and unequivocal definition of the term "Wal–Mart" as set forth in the First Amendment. Thus, we must consider whether the trial court properly determined what the parties intended by their inclusion in the First Amendment of "Wal–Mart, its successors or assigns" as an exception to the Supermarket Restriction.

In Pennsylvania, lease agreements are governed by contract law and general contract law principles. As such, when the language of a lease is clear and unequivocal, its meaning will be determined by its contents alone in ascertaining the intent of the parties. Every contract imposes a duty of good faith and fair dealing on the parties in the

---

Lease Agreement, § 39.01. Thus, the integration clause in the Lease Agreement specifically discounts any oral or written statements made *prior* to the execution of the Lease Agreement not contained in the Lease.

The subsequently executed First Amendment contains the following provision:

All terms and conditions of the Lease not inconsistent with this Amendment shall remain in full force and unchanged hereby.

First Amendment to Lease Agreement, § 7.1. The above cited provision in the First Amendment does nothing more than preserve the integration clause of the Lease Agreement as it relates to oral and written statements made *prior* to the Lease Agreement. Thus, the integration clause in the Lease Agreement, re-

mains in full force and precludes from consideration any oral or written statements made prior to the execution of the Lease Agreement. Section 7.1 of the First Amendment does not serve as an integration clause for the subsequently signed First Amendment. Therefore, Appellant's contrary claim lacks merit.

5. In addition, we note that the trial court stated it would have reached the same conclusion had it "viewed only the 'First Amendment to Lease Agreement' and the lease itself as the contract documents." *See* Trial Court Opinion, 8/3/07, at 7 n. 6. For this reason too, Appellant's claim is of no moment.

performance and the enforcement of the contract.

*Trizechahn Gateway, LLC v. Titus,* 930 A.2d 524, 533–534 (Pa.Super.2007) (citations omitted). Inasmuch as a lease must be construed according to general principles of contract law, we are mindful that the primary objective in construing a contract is to effectuate the intentions of the parties. *Id.* at 537 (citing *Seven Springs Farm v. Croker,* 569 Pa. 202, 207, 801 A.2d 1212, 1215 (2002)).

■■■■■ ¶ 19 Nonetheless, "[i]t is firmly settled that the intent of the parties to a written contract is contained in the writing itself." *Krizovensky v. Krizovensky,* 425 Pa.Super. 204, 624 A.2d 638, 642 (1993), *appeal denied,* 536 Pa. 626, 637 A.2d 287 (1993). Accordingly, when the words of a contract are clear and unambiguous, we are to determine what the parties intended by looking only at the express language of the agreement. *Id.*

[W]here there is any doubt or ambiguity as to the meaning of the covenants in a contract or the terms of a grant, they should "receive a reasonable construction, and one that will accord with the intention of the parties; and, in order to ascertain their intention, the court must look at the circumstances under which the grant was made." "It is the intention of the parties which is the ultimate guide, and, in order to ascertain that intention, the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement."

*In re Estate of Quick,* 588 Pa. 485, 491, 905 A.2d 471, 474–475 (2006) (quoting *Hindman v. Farren,* 353 Pa. 33, 35, 44 A.2d 241, 242 (1945)) (emphasis omitted).

¶ 20 In reaching its conclusion, the trial court stated the following:

Since both parties agree that the contract is clear and unequivocal, we must determine the parties' intent from the contract documents. We are satisfied that the contracting parties intended only the portion of the Shopping Center occupied by Wal–Mart, and referred to specifically in the prior agreements, to be exempted from the Supermarket Restriction. Otherwise[,] there would be no reason to identify the particular parcel in the various contract documents, including the lease amendment. Viewed in that context, the term "successors and assigns" refers to only subsequent owners and lessors of the Wal–Mart parcel identified in the documents. This is the only logical interpretation of that language. To interpret it as [Appellant] suggests would effectively nullify the Supermarket Restriction. [Appellant] could lease any portion of the Shopping Center to an entity selling groceries by simply using Wal–Mart as a straw party. We are certain that this was not the intent of the contracting parties.[FN]

[FN] This rationale applies even if we view only the "First Amendment to Lease Agreement" and the original [L]ease itself as the contract documents. However, we are further satisfied that the contract includes not only those documents, but also the other documents quoted from above and/or referred to in the "Background" section of the "First Amendment to Lease Agreement."

Trial Court Opinion, 8/3/07, at 6–7.

¶ 21 We next review the documents to determine whether the trial court reached a proper conclusion relating to the intent of the parties. Resolution of this claim rests upon an interpretation and construction of the meaning of the language used in the First Amendment. Accordingly, we will limit our review to the language utilized by the parties in the First Amendment.

¶ 22 Our review of the record reflects that the First Amendment provides the following provision regarding the Supermarket Restriction:

4. *Supermarket Restriction.* Landlord and Tenant agree that, effective upon the execution of the Marmaxx Sublease on or about September 20, 2001, Section 14.01 of the Lease shall have been amended to provide that, whether or not the Demised Premises is operated as a supermarket or for the sale of food, the Supermarket Restriction shall remain in full force and effect throughout the original term of the Lease . . .

First Amendment, ¶ 4.

¶ 23 The First Amendment further provides the following exception to the Supermarket Restriction:

5. *Wal–Mart.* Notwithstanding anything to the contrary contained herein or in the Lease, the Supermarket Restriction shall not apply to Wal–Mart, its successors or assigns.

First Amendment, ¶ 5.

¶ 24 In addition, the First Amendment provides a relevant "background" statement, which essentially defines the term "Wal–Mart" as follows:

G. Wal–Mart Stores, Inc. ("Wal–Mart") is the fee owner of certain real property that comprises a portion of the Shopping Center (the "Wal–Mart Property") as depicted on Exhibit "A" hereto.

First Amendment, ¶ G. Thus, the unambiguous language of the First Amendment limits the definition of the term "Wal–Mart" to "the fee owner" of the shopping center property depicted on Exhibit A. Accordingly, the First Amendment's exception to the Supermarket Restriction is limited to the "fee owner" of the parcel of property depicted on Exhibit A. As such, it is apparent by the express language of the First Amendment that the parties intend-ed to contain the application of the exception to the Supermarket Restriction to the land then owned by Wal–Mart, as indicated in the attached Exhibit A. Therefore, we cannot conclude that the trial court erred in applying the exception to the Supermarket Restriction only to the property depicted on Exhibit A. Accordingly, Appellant's claim that the trial court erred in this result lacks merit.

¶ 25 Appellant last argues that the trial court improperly reformed the agreement of the parties. Basically, Appellant contends that the trial court reformed paragraph 5 of the First Amendment by substituting the term "Wal–Mart" with "Wal–Mart Property." Appellant contends there is no legal basis for the reformation.

¶ 26 It has long been the law that courts of equity have the power to reform a written instrument where there has been a showing of fraud, accident or mistake. *Regions Mortgage, Inc. v. Muthler,* 585 Pa. 464, 467, 889 A.2d 39, 41 (2005) (quoting *Kutsenkow v. Kutsenkow,* 414 Pa. 610, 612, 202 A.2d 68, 68–69 (1964)). However, this Court has stated that the process of a court defining the scope of a contract is actually construction and not reformation. *See Powell v. Powell,* 244 Pa.Super. 264, 367 A.2d 314, 319 n. 4 (1976) (noting that "delineating the scope of a general release is construction, not reformation").

¶ 27 Our review of the record reflects that the trial court, sitting as a court in equity, was requested to determine the scope of the exception to the Supermarket Restriction in this matter. In reaching its determination, the trial court interpreted the First Amendment and concluded that the parties intended to limit the application of the exception to the Supermarket Restriction. Such a construction by the trial court in determining the scope of the exception to the Supermarket Exclusion

falls short of the alleged improper contract reformation claimed by Appellant. Thus, Appellant's claim lacks merit.

¶ 28 In conclusion, we are satisfied that there are no genuine issues of material fact in this matter and that Appellee is entitled to judgment as a matter of law. Therefore, we conclude that the trial court neither committed an error of law nor abused its discretion in granting Appellee's Motion for summary judgment. Accordingly, we affirm the trial court's order granting summary judgment for Appellee.

¶ 29 Order affirmed.