J-A05023-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GEORGE HANCOCK AND JOAN HANCOCK, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| FRIENDS HOSPITAL, PSYCHIATRIC SOLUTIONS, INC., FRIENDS HOSPITAL BEHAVIORAL HEALTH SYSTEMS, LP, FRIENDS GP, LLC, LEAH E. ROSENKRANTZ, D.O. AND LUIDMILA LOBACH, M.D., | |
| Appellees | No. 1666 EDA 2014 |

Appeal from the Order entered May 7, 2014,
in the Court of Common Pleas of Philadelphia County,
Civil Division, at No(s): April Term, 2012 No. 01935

BEFORE:  GANTMAN, P.J., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED MARCH 09, 2015**

Spouses George and Joan Hancock, ("Mr. Hancock", "Mrs. Hancock," or collectively, "Appellants"), appeal from the trial court's order granting summary judgment in favor of Friends Hospital, Psychiatric Solutions, Inc., Friends Hospital Behavioral Health Systems, LP, Friends GP, LLC, Leah E. Rosenkrantz, D.O. and Luidmila Lobach, M.D., ("Dr. Lobach," or collectively, "Hospital").  We affirm.

The trial court detailed the factual and procedural history of this case as follows:

On July 20, 2010, [Mr. Hancock] voluntarily presented himself at Friends Hospital.  He waited in the Main Lobby waiting area for

approximately eight hours – from 2:30 p.m. to 10:30 p.m. Mr. Hancock dozed and sat quietly until 4:00 p.m. when he was interviewed by a nurse. He continued to sit quietly the remainder of the evening. [Dr. Lobach] met with Mr. Hancock for 45 minutes from 6:15 p.m. to 7:00 p.m. At 10:30 p.m. when he was discharged, Mr. Hancock was referred to a social service agency to get housing and medications. While Mr. Hancock remained in the waiting area, he was being monitored every 15 minutes.

On July 22, 2010, Mr. Hancock drove his van into his wife's car, causing injuries to both of them. Mr. Hancock was arrested and subsequently incarcerated.[1]

In April, 2012, [Appellants] initiated this litigation against Friends Hospital, Dr. Lobach and others, claiming inter alia, gross negligence and negligence because [Hospital] knew [Mr. Hancock] needed a place to sleep, knew he had substance abuse and mental health problems, and, that by failing to hospitalize him on July 20th, it was foreseeable that Mr. Hancock would act violently toward himself and his wife.

After litigation discovery was closed, [Hospital] filed Motions for Summary Judgment, which were opposed by [Appellants]. On April 7, 2014, this Court granted Summary Judgment in Part, finding that as a matter of law the record does not support gross negligence. The Motions based on negligence were denied.

The April 7, 2014 Orders were vacated following Motions for Reconsideration filed by all parties. Supplemental Memoranda were submitted and oral argument was heard by this Court. On May 6, 2014, this Court ruled from the bench and provided the overview and analysis in support of Findings of Fact and Conclusions of Law for the decisions: that all of [Hospital's]

_____

[1] In their statement of the case, Appellants further posit that "[t]wo days after having been discharged from [Hospital], Mr. Hancock attempted to kill himself by sticking a knife in his stomach; he then drove his van directly into [his wife's] car while she was inside her vehicle. Mr. Hancock was arrested, charged with multiple felonies, spent an extended period of time in prison, contracted MRSA while in prison, and was divorced by his wife of 27 years, all as a direct result of this incident." Appellants' Brief at 5-6.

Motions for Summary Judgment were granted, that [Appellants']
Motion for Reconsideration was denied, and, that [Appellants']
Complaint was Dismissed With Prejudice.

When considering the Mental Health Procedures Act,
Section 7114(a), [Hospital is] immune from civil liability
inasmuch as they all participated in the decision to discharge
[Mr.] Hancock on July 20, 2010.

In accordance with Rule 1925(a) of the Pennsylvania Rules
of Appellate Procedure, this Court respectfully refers the
Honorable Superior Court to the Hearing Transcript, dated May
6, 2014, as the reasons for the rulings.

Trial Court Opinion, 6/23/14, at 1-2.  The trial court did not order Appellant

to file a concise statement of errors complained of on appeal pursuant to

Pa.R.A.P. 1925(b).

Appellants present the following issues for our consideration:

A. Did the trial court err in granting the Motion for Summary
   Judgment of [Hospital] and dismissing [Appellants']
   Complaint with Prejudice?

B. Did the trial court err in granting the Motion for Summary
   Judgment of [Dr. Lobach] and dismissing [Appellants']
   Complaint with Prejudice?

Appellants' Brief at 4.

Our scope of review … [of summary judgment orders] … is
plenary.  We apply the same standard as the trial court,
reviewing all the evidence of record to determine whether there
exists a genuine issue of material fact.  We view the record in
the light most favorable to the non-moving party, and all doubts
as to the existence of a genuine issue of material fact must be
resolved against the moving party.  Only where there is no
genuine issue as to any material fact and it is clear that the
moving party is entitled to judgment as a matter of law will
summary judgment be entered.

Motions for summary judgment necessarily and directly
implicate the plaintiff's proof of the elements of his cause of

action. Summary judgment is proper if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury. Thus a record that supports summary judgment will either (1) show the material facts are undisputed or (2) contain insufficient evidence of facts to make out a *prima facie* cause of action or defense and, therefore, there is no issue to be submitted to the jury. Upon appellate review we are not bound by the trial court's conclusions of law, but may reach our own conclusions. The appellate Court may disturb the trial court's order only upon an error of law or an abuse of discretion.

*Alexander v. City of Meadville,* 61 A.3d 218, 221 (Pa. Super. 2012) (internal citation omitted).

Initially, we note that Appellants' argument does not adhere to our rules of appellate procedure. *See* Pa.R.A.P. Rule 2119 ("**The argument shall be divided into as many parts as there are questions to be argued** …, followed by such discussion **and citation of authorities** as are deemed pertinent.") (emphasis supplied). Appellants present only two questions for our review, yet they subdivide their argument into seven parts. Appellants compound their procedural misstep by failing to develop all of these subparts appropriately. Indeed, Appellants include in their argument the contention that "[Appellants] have stated a viable claim under the Emergency Medical Treatment and Active Labor Act ("EMTALA") against [Hospital]." Appellants' Brief at 11. This argument is not articulated in Appellants' statement of questions. Moreover, while Appellants cite to the record in support of their contention, Appellants do not cite *any* case law to

- 4 -

buttress their EMTALA argument. **See** Appellants' Brief at 22-26. Accordingly, we find this issue waived for appellate review and we decline to reach it. **See Giant Food Stores, LLC v. THF Silver Spring Development, L.P.,** 959 A.2d 438, 444 (Pa. Super. 2008) ("Appellant's issue on appeal is waived because [Appellant] has failed to set forth in its appellate brief any citation to legal authority pertaining to [Appellant's] argument"). Additionally, Appellants argue that Hospital is "legally responsible for the actions of" Dr. Lobach, yet Appellants fail to cite a single case for this proposition, and rely only on a citation to the "Pennsylvania Suggested Standard Jury Instructions, 4th Ed. § 14.80." Appellants' Brief at 34-35. Again, Appellants' failure to develop their argument effects waiver. **See Giant Food Stores, supra,** at 444. Moreover, our finding that Hospital is immune from liability as delineated more fully below renders unavailing Appellants' additional arguments regarding the viability of Mrs. Hancock's third party claim, Mrs. Hancock's loss of consortium claim, Appellants' joint claim "for loss of their marital relationship," and Mr. Hancock's contention that Hospital is "directly responsible for his arrest, incarceration and ultimately for his guilty plea to aggravated assault." **See** Appellants' Brief at 26-33.

Appellants contend that the Mental Health Procedures Act, ("MHPA"), 50 P.S. § 7103 *et seq,* does not apply to this action, and that therefore, Hospital is not entitled to the immunity from liability that the MHPA affords mental health providers under 50 P.S. § 7114. **See** Appellants' Brief at 8.

Appellants' counsel argued before the trial court:

The [Mental Health] Act establishes rights and procedures for all involuntary treatment of mentally ill persons, whether inpatient or outpatient, and for all voluntary inpatient treatment of mentally ill persons.

Now, Mr. Hancock, everyone will concede [that] this was not a case of involuntary treatment. He voluntarily presented himself. I think that everyone else will also concede that Mr. Hancock was never treated as an inpatient. So this is not a case of voluntary inpatient treatment of a mentally ill person.

So, yes, Mr. Hancock wanted to be inpatient for treatment. That's why he was there. And if he had been admitted, we wouldn't be here today, but he wasn't admitted.

N.T., 5/6/14, at 32-33. Appellants further argue that "[s]ince Mr. Hancock's treatment was voluntary and performed as an outpatient, his treatment was not 'encompassed within the protection of the Act.' Therefore, the immunity provisions of the Act do not apply to [Hospital]." Appellants' Brief at 9. We disagree.

The MHPA specifically provides:

Immunity from Civil and Criminal Liability.—(a) **In the absence of willful misconduct or gross negligence**, a county administrator, a director of a facility, **a physician,** a peace officer **or any other authorized person who participates in a decision that a person be examined or treated under this act**, **or that a person be discharged**, **or placed under** partial hospitalization, **outpatient care** or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator **or other authorized person who denies an application for voluntary treatment** or for involuntary emergency examination and treatment, **shall not be civilly or criminally liable for such a decision or for any of its consequences.**

50 P.S. § 7114(a) (emphasis supplied). Thus, based on a plain reading of the statute, Hospital is immune from civil liability for the decision not to admit Mr. Hancock for voluntary inpatient treatment, as well as for any of the decision's consequences such as Mr. Hancock's attempted suicide, motor vehicle accident, and the resulting personal injuries to Appellants. *See In re R.D.R.*, 876 A.2d 1009, 1016 (Pa. Super. 2005) ("[W]hen interpreting a statute, the court must give plain meaning to the words of the statute. It is not a court's place to imbue the statute with a meaning other than that dictated by the plain and unambiguous language of the statute."); *see also* 1 Pa.C.S.A. § 1921(a)-(b) ("(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions. (b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."); *compare Fogg v. Paoli Memorial Hospital,* 686 A.2d 1355, 1358 (Pa. Super. 1996) (hospital was not immune from liability pursuant to 50 P.S. § 7114(a) for death of mentally ill patient who presented to emergency room, but was never evaluated or treated prior to patient's suicidal fall from hospital window). Specifically, in affirming the trial court's determination that appellant/hospital was not entitled to immunity, we reiterated that "[t]he decision making process referred to in 7114 was found to be one 'which would take place within the context of treatment, care, diagnosis or rehabilitation'." *Fogg, supra,* at 1358 *citing*

***McNamara v. Schleifer Ambulance Serv.,*** 556 A.2d 448, 449 (Pa. Super.

1989).  We further explained:

> In this case the trial court correctly noted that [patient] was **not yet being treated by Appellant[-hospital] at the time of his injuries**.  **Although he presented himself for treatment at the emergency room, he was not examined or treated by any hospital personal [sic] while in the emergency room, and no decisions regarding his care or treatment were made while [patient] was at Appellant[-hospital's] facility.**  Since no one from Appellant-hospital who was trained in the field of mental health was treating Appellant or making decisions regarding his treatment at the time of the accident, Appellant[-hospital] cannot avail itself of the immunity protections of the MHPA.

***Fogg, supra,*** at 1358.

Here, by contrast, following his voluntary presentation at Hospital's

emergency room for treatment, Mr. Hancock was examined and treated by

various Hospital personnel who were trained in the field of mental health,

and made decisions regarding Mr. Hancock's care and treatment while he

was at Hospital's emergency room.   It is undisputed that prior to his

discharge from Hospital, Mr. Hancock had been evaluated by a nurse, Denise

McClellan, and Dr. Lobach, a psychiatry resident physician, and was

discharged by an attending physician, Dr. Leah E. Rosenkrantz.   ***See***

***generally*** Mr. Hancock's Medical Records from Hospital, 7/20/12.   It is

further undisputed that Mr. Hancock was diagnosed with non-acute

depressive disorder, and alcohol and drug dependency, and was referred to

an outside facility for follow-up.   ***Id.***  Moreover, at the conclusion of oral

arguments, the trial court observed:

Section 7114(a), I'm not focusing so much on treatment, although I acknowledge that every 15-minute observation could be characterized as treatment, so I don't want to suggest that he was not treated, but I believe that the participation and the decision that a person be discharged, or any other authorized person who denies an application for voluntary treatment, which is what we have here, brings in the immunity and none of the defendants can be civilly liable for those decisions or for those consequences.

N.T., 5/6/14, at 49-50.

Our Supreme Court has determined:

Section [7]114 [of the MHPA] speaks of immunity of ones "who participates in a decision that a person be examined or treated under this act, ..." 50 P.S. § 7114. Treatment is defined in the MHPA as follows:

Adequate treatment means a course of treatment designed and administered to alleviate a person's pain and distress and to maximize the probability of his recovery from mental illness. It shall be provided to all persons in treatment who are subject to this act. **It may include inpatient treatment, partial hospitalization, or outpatient treatment.** Adequate inpatient treatment shall include such accommodations, diet, heat, light, sanitary facilities, clothing, recreation, education and medical care as are necessary to maintain decent, safe and healthful living conditions.

**Treatment shall include diagnosis, evaluation, therapy, or rehabilitation needed to alleviate pain and distress and to facilitate the recovery of a person from mental illness and shall also include care and other services that supplement treatment and aid or promote such recovery**.

50 P.S. § 7104.

***Farago v. Sacred Heart General Hospital,*** 562 A.2d 300, 304 (Pa. 1989)

(emphasis supplied).

- 9 -

While Appellants criticize the nature and extent of Mr. Hancock's treatment at Hospital, the record when viewed in the light most favorable to Appellants reflects that Mr. Hancock was indeed treated by Hospital personnel trained in mental health, and a decision was made regarding his care by Hospital, which denied him admission for voluntary inpatient treatment. Accordingly, Appellants' argument that Hospital's treatment of Mr. Hancock falls outside of the purview of 50 P.S. § 7114(a) fails, and Hospital is entitled to invoke the MHPA's immunity provision.

Appellants further argue that "[e]ven if the [MHPA] were to apply to this matter, [Appellants] have provided sufficient proof that [Dr. Lobach's] treatment constituted a gross departure from the standard of care." Appellants' Brief at 9 (bold omitted). Again, we cannot agree. As set forth in **Albright v. Abington Memorial Hospital,** 696 A.2d 1159 (Pa. 1997), and relied upon by the trial court, our Supreme Court explained:

> It appears that the legislature intended to require that liability be premised on facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity, or indifference. We hold that the legislature intended the term gross negligence to mean a form of negligence where the facts support substantially more than ordinary carelessness, inadvertence, laxity, or indifference. The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care.
>
> *Bloom,* 409 Pa.Super. at 98-99, 597 A.2d at 679.
>
> We believe that this definition is a clear, reasonable, and workable definition of gross negligence which is consistent with the purpose and intent of the [MHPA]. []
>
> ***

- 10 -

While it is generally true that the issue of whether a given set of facts satisfies the definition of gross negligence is a question of fact to be determined by a jury, a court may take the issue from a jury, and decide the issue as a matter of law, if the conduct in question falls short of gross negligence, the case is entirely free from doubt, and no reasonable jury could find gross negligence. *See, e.g., Willett v. Evergreen Homes, Inc., et. al.,* 407 Pa.Super. 141, 595 A.2d 164 (1991), *alloc. denied,* 529 Pa. 623, 600 A.2d 539 (1991) (summary judgment affirmed as to employees of facility pursuant to Mental Health and Retardation Act of 1966, 50 P.S. § 4603, which contains a limited immunity provision similar to that found in the [MHPA] at issue and which immunizes certain treatment decisions unless such decisions rise to the level of, *inter alia,* gross negligence); 57A Am.Jur.2d § 256. []

***

To require mental health employees and their employers to defend jury trials on the issue of gross negligence where the trial judge finds as a matter of law that, at best, only ordinary negligence has been established, would gut the limited immunity provision of the [MHPA] of any meaning and unfairly subject such employees and facilities to protracted and expensive litigation. []

***

[] We cannot expect those covered by the [MHPA] to be soothsayers, and the limited immunity provision of the [MHPA] recognizes this understanding. The granting of summary judgment is particularly appropriate here in light of the intent of the [MHPA] to provide limited immunity from civil and criminal liability to mental health personnel and their employers in rendering treatment in this "unscientific and inexact field." *Farago v. Sacred Heart General Hospital,* 522 Pa. 410, 417, 562 A.2d 300, 304 (1989). The purpose of the [MHPA's] immunity provision is to insulate mental health employees and their employers from liability for the very determinations made by the Hospital here.

In summary, we find that the lower courts applied **a clear and workable definition of gross negligence, which, for purposes of the [MHPA], constitutes conduct substantially more than ordinary carelessness, inadvertence, laxity, or indifference; that is, behavior that is flagrant, grossly**

**deviating from the ordinary standard of care.** Moreover, we find that when presented with facts that do not meet the definition of gross negligence, as a matter of law, a court may withdraw the factual determination of gross negligence from the jury and decide the question as a matter of law.

*Albright v. Abington Memorial Hospital,* 696 A.2d 1159, 1164-1165; 1167 (Pa. 1997) (emphasis supplied).

Based on our careful scrutiny of the record in the light most favorable to Appellants, we find that the trial court did not err in granting summary judgment in favor of Hospital because Hospital was not grossly negligent. Specifically, the trial court explained:

> [] I just simply cannot find gross negligence [here].
>
> And I looked at the expert report of [Appellants' expert] Dr. Schouten from Harvard, M.D., J.D. I looked at everything that he said. I still can't find gross negligence here. And if, indeed, we were at a nonsuit stage, I think we'd be in trouble, [Appellants, I] really do, because he has just accumulated a bunch of factors that, basically, poor Mr. Hancock just didn't have a place to sleep and he needed a place to sleep that night. That's what I got out of it.
>
> So, anyway, okay, the expert report of Dr. Schouten, in some situations there are occasions when there's a summary judgment motion where simply having a plaintiff's expert report is enough to overcome a summary judgment motion, but I've read it and I don't see that here. So I'm certainly going to refer to the quote that all of you have referred to. There are two quotes. One is the *Albright* quote where the determination of whether or not a factor, whether or not a situation involves gross negligence is usually for a jury but may be removed when, as a matter of law, the judge feels it's free from doubt and there's no possibility that a jury could find gross negligence, and I really do believe this is that situation.
>
> When we look at these factors here, you know, he was estranged from his son, he was living in his car, he had medical

- 12 -

problems, you know, those types of factors, that's not enough to find gross negligence.

And then I look also in the *Albright* case where they say, therefore, what is gross negligence? It's not just ordinary carelessness or inadvertence or laxity or indifference. And looking at *Albright* as a guide, I think that I feel comfortable that there's no gross negligence here.

N.T., 5/6/14, at 42-44.

Significantly, Mr. Hancock admitted changing his mind about wanting to commit suicide prior to presenting at Hospital, and that he "wanted to live." **See** Memorandum of Law in Support of [Hospitals'] Response in Opposition to [Appellants'] Motion for Reconsideration, 4/30/14, Exhibit E; N.T., Mr. Hancock's Deposition, Volume II, 4/18/13, at 154. Mr. Hancock further acknowledged that he advised Hospital's staff that he "d[id]n't want to commit suicide. I'm here to live." **Id.** at 156. Mr. Hancock conceded he "never told anyone that [he] wanted to harm or kill" his wife. **Id.** at 162. Accordingly, the record reflects that in deciding not to admit Mr. Hancock for voluntary inpatient treatment, Hospital's actions did not constitute "conduct substantially more than ordinary carelessness, inadvertence, laxity, or indifference; that is, behavior that is flagrant, grossly deviating from the ordinary standard of care." **Albright, supra,** at 1167.

Based on the foregoing, we find that the trial court did not err in granting summary judgment in favor of Hospital because Hospital was not grossly negligent in treating Mr. Hancock, and was immune from liability pursuant to 50 P.S. § 7114(a).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2015