J-S35001-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: S.W.C., JR., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Y.C., NATURAL MOTHER | |
| | No. 3354 EDA 2014 |

Appeal from the Order Entered October 10, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000643-2012
CP-51-DP-0055444-2010

| | |
|---|---|
| IN THE INTEREST OF: J.D.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Y.C., NATURAL MOTHER | |
| | No. 3355 EDA 2014 |

Appeal from the Order Entered October 10, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000223-2012
CP-51-DP-0055445-2010

| | |
|---|---|
| IN THE INTEREST OF: Y.L.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Y.C., NATURAL MOTHER | |
| | No. 3356 EDA 2014 |

Appeal from the Order Entered October 10, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000224-2012
CP-51-DP-0055446-2010

| | |
|---|---|
| IN THE INTEREST OF: K.M.C.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Y.C., NATURAL MOTHER | No. 3357 EDA 2014 |

Appeal from the Order Entered October 10, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000225-2012
CP-51-DP-0055447-2010

| | |
|---|---|
| IN THE INTEREST OF: H.E.A.D.C., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: Y.C., NATURAL MOTHER | No. 3358 EDA 2014 |

Appeal from the Order Entered October 10, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000226-2012
CP-51-DP-0055448-2010

J-S35001-15

BEFORE: MUNDY, J., OLSON, J., and PLATT, J.[*]

MEMORANDUM BY MUNDY, J.:　　　　　　　　**FILED SEPTEMBER 15, 2015**

Appellant, Y.C. (Mother), appeals from the October 10, 2014 decrees involuntarily terminating her parental rights to five of her minor children: S.W.C., Jr., a male, born in January 2000; J.D.C., a female, born in September 2001; Y.L.C., a female, born in July 2002; K.M.C.C., a male, born in April 2005; and H.E.A.D.C., a male, born in January 2010 (collectively, the Children). After careful review, we affirm.[1]

This Court set forth the factual and procedural background of this case in our review of the decrees involuntarily terminating Father's parental rights to the Children. *See J.D.C.*, *supra* at 3-5. Therein, we stated, in relevant part, as follows.

> Mother and Father's three oldest children, Do.L.C. (female), Jaz.C[.] (female), and Du.C[.] (male), ages 16, 17, and 18, are all under … Department of Human Services' ("DHS") supervision, but are not subject to the current termination petitions….
>
> DHS became involved with the Children in May 2010 following numerous calls to DHS' hotline that the Children were coming to school dirty and hungry,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] By separate decrees the same date, the parental rights of the Children's father, S.W.C., Sr., a/k/a S.C., were involuntarily terminated. Father appealed the decrees, which this Court affirmed by separate memorandum. *See In re J.D.C., Y.L.C., K.M.C.C., H.E.A.D.C., and S.W.C., Jr.*, --- A.3d ----, 3208, 3214-3217 EDA 2014 (Pa. Super. 2015) (unpublished memorandum).

- 3 -

that the Children's home was cluttered and disorganized, that Do.L.C. was not attending school, and that Father had hit Y.L.C. At the time, the Children were living with Mother; Father was not a custodial caregiver.

Dependency petitions were filed on May 24, 2010, and granted on June 10, 2010. Initially, the Children remained in Mother's custody. However, the Children were placed in foster care in November 2010 ….

DHS filed petitions for goal change to adoption and involuntary termination of parental rights to the four youngest children, H.E.A.D.C., K.M.C.C., Y.L.C., and J.D.C. on May 24, 2012. On December 21, 2012, a petition was filed as to S.W.C., Jr.

…

Hearings were held on the termination petitions on April 22, 2014 and October 10, 2014.[2] DHS presented five witnesses: Henry Bullock, the original DHS worker assigned to the case from April 2010 to November 2010; Bianca Lahara, the first case manager assigned to the case from November 2010 to January 2014; Latoya Carr-Hermitt, case manager assigned to the case from December 2010 through the October 2014 termination hearing; Ms. Griffin[3] of First Home Care, current case manager; Antoinette Bogan, First Home Care Social Worker, assigned to the case in July 2014 to present….[2]

---

[2] A partial termination hearing took place in 2013 before the Honorable E. Wright. Due to time constraints, the remainder of the hearing was continued. Before the remainder of the case could be heard, Judge Wright recused himself on September 25, 2013, following an *ex parte*

---

[2] Mother testified on her own behalf during the hearing.

communication of Mother's former counsel to the court. The case was reassigned to the Honorable Allen Tereshko, who ordered the termination proceedings start again *de novo*.

[3] Ms. Griffin's first name was inaudible when she testified.

*Id.* (citations omitted; footnotes in original).

On October 10, 2014, the trial court terminated Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). On November 10, 2014, Mother filed timely notices of appeal and concise statements of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i).[3] This Court consolidated Mother's appeals *sua sponte*. **See** Pa.R.A.P. 513. On December 10, 2014, the trial court issued an opinion pursuant to Rule 1925(a).

On appeal, Mother presents the following issues for our review.

1. Whether the [t]rial [c]ourt erred in relying on inadmissible evidence to render its findings of fact[?]

2. Whether the [t]rial [c]ourt erred and/or abused its discretion by terminating the parental rights of [M]other … pursuant to 23 Pa.C.S.A. [§] 2511(a)(1), (2), (5), (8), where the findings of fact were not supported by clear and convincing evidence[?]

---

[3] On November 21, 2014, Mother filed amended notices of appeal, which included separate captions reflecting the separate decrees that were entered on separate dockets. **See TCPF Ltd. P'ship v. Skatell**, 976 A.2d 571, 574 n.2 (Pa. Super. 2009) (noting that taking one appeal from several orders is not acceptable practice and is discouraged, but declining to quash the appeal where appellant filed an amended appeal).

Mother's Brief at 7.

We consider Mother's issues mindful of our well-settled standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and

> status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted statutory grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009).

Instantly, we conclude the trial court properly terminated Mother's parental rights pursuant to Section 2511(a)(2) and (b), which provide as follows.[4]

> **§ 2511. Grounds for involuntary termination**
>
> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> …
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

---

[4] In light of our disposition regarding Section 2511(a)(2), we need not consider Mother's arguments with respect to Section 2511(a)(1), (5), and (8). *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*) (stating that this Court need only agree with any one subsection of 23 Pa.C.S.A. § 2511(a), along with Section 2511(b), in order to affirm the termination of parental rights), *appeal denied*, 863 A.2d 1141 (Pa. 2004).

…

> **(b) Other considerations**.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of Section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements.

> (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination [of parental rights under Section 2511(a)(2),] due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; to the contrary those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002).

With respect to Section 2511(b), the requisite analysis is as follows.

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id*. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id*. at 63.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, the trial court made the following factual findings.

> Mother's FSP [Family Service Plan] Objectives were established on May 25, 2010. Mother was ordered to comply with housing, mental health treatment; visitation, bonding evaluation; signing for mental health therapists; and attending medical appointments. The record shows that Mother has minimally complied with her FSP Objectives.
>
> Mother has failed to comply with her housing FSP Objective. When asked for her current residence, Mother refused to provide the information and directed DHS to send all correspondence to her mother's address. She has also failed to avail herself to any of the housing programs available through ARC.
>
> Mother has also failed her bonding evaluation FSP Objective. Mother was referred to ATA to complete a bonding evaluation, but missed the first

appointment and never rescheduled. Moreover, Mother was previously ordered at multiple court hearings to reschedule the bonding evaluation, but did not comply.

Mother has failed to comply with her mental health FSP Objective. Mother was ordered to comply with DHS mental health but had never completed the goal. She was referred to services at ARC but stopped attending because she didn't want to go on Saturdays. Even though Mother provided notice of attending treatments in March and April of 2014, she did not attend any treatment between 2011 and March of 2014.

Additionally, Mother has minimally complied with her visitation FSP Objective. The Case Manager [Bianca Lahara] testified that there were concerns about Mother's attendance at the visits.

…

Further, Mother has minimally complied with the FSP Objective requiring her to consent to the [C]hildren's medical treatment. [Lahara] testified that she ran into issues when contacting Mother for consent. Mother never picked up the phone when someone from the agency called and would rarely return[] calls. In addition, [Lahara] testified that in one instance Mother did not want to sign a document for Y.L.C.'s psychiatrist appointments because of scheduling issues resulting in a lapse of time for the child's appointments. The DHS Worker [Latoya Carr-Hermitt] also testified,

> One time [Y.L.C.] needed to have services signed for TSS and DHS services, for emotional support. That was scheduled through the school psychiatrist on several occasions. [Mother] was supposed to come, she didn't show up. I would offer to bring her, provide tokens, she never came. On several occasions K.M.C.C. was hospitalized after being 302'd. Mom was requested to come to the hospital for

- 10 -

> intake, she never did, so DHS had to get a consent to treat. So he could be released from the hospital.

Trial Court Opinion, 12/10/14, at 12-14 (internal citations omitted).

Turning to the merits of Mother's appeal, she first asserts that the trial court erred in relying on inadmissible evidence in terminating her parental rights. In addition, Mother asserts that the trial court's "opinion cites liberally from evidence not introduced at the termination hearing, and as such its findings are not supported by the record." Mother's Brief at 14.

Significantly, Mother does not support her argument with legal discussion and analysis. In fact, Mother does not specify which evidence the court relied on that was allegedly either inadmissible or not introduced at the hearing. As such, we conclude that Mother's first issue is waived. *See Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.*, 959 A.2d 438, 444 (Pa. Super. 2008) (stating that, "[t]he Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority. Failure to do so constitutes waiver of the claim[]") (citations and quotation marks omitted), *appeal denied*, 972 A.2d 522 (Pa. 2009); *accord* Pa.R.A.P. 2119(a). Even if Mother's issue was not waived, we would conclude that her issue is without merit because the testimonial evidence supports the trial court's factual findings.

In her second issue, Mother argues that the termination of her parental rights under Section 2511(a)(2) is not warranted, as follows.

> [T]he evidence presented at trial showed that [M]other has remedied the conditions that caused the [C]hildren to come into foster care and, but for housing, is now able to care for her [C]hildren. Additionally, DHS did not provide [M]other with reasonable efforts to reunify her with her [C]hildren.

Mother's Brief at 11.

The foregoing factual findings by the trial court belie Mother's assertion that she is now able to care for the Children. Further, Mother's argument acknowledges that she has not found suitable housing. Indeed, Mother testified on October 10, 2014, the final day of the hearing, that she has been living with her aunt "since August 8th …. And I'm getting ready to move on my own after I leave here today to put a down payment on a place." N.T., 10/10/14, at 67. Mother testified on cross-examination by counsel for DHS that the home she plans to move to has only one bedroom. *Id.* at 71. Therefore, more than four years after the Children were placed in the custody of DHS, Mother remains unable to provide for their physical and mental well-being.

In addition, to the extent Mother asserts that her conduct does not warrant termination pursuant to Section 2511(a)(2) because DHS failed to provide her with "reasonable efforts to reunify her with her Children," we disagree. Mother's Brief at 11. In *In re D.C.D.*, 105 A.3d 662 (Pa. 2014), our Supreme Court held that neither Section 2511(a)(2) nor Section 2511(b)

"requires a court to consider the reasonable efforts provided to a parent prior to termination of parental rights." *Id.* at 672. Therefore, Mother's assertion is without merit.

Further, Mother argues as follows.

> [P]ast incapacity alone is not [a] sufficient basis for involuntary termination, there must be evidence of a parent[']s present incapacity. [Mother]'s unrefuted testimony was that she received treatment for her anxiety over 'probably a total of a year' of the two years prior to the filing of the termination petition. Furthermore, there has been no showing that her 'anxiety' was ever so serious as to incapacitate her as a parent.

Mother's Brief at 15-16 (citations omitted).[5]

Because the record supports the trial court's credibility findings in favor of the DHS caseworkers that Mother did not comply with her mental health FSP objective, we will not disturb the decrees. Moreover, we reject Mother's argument that the trial court terminated her parental rights on the basis of her past incapacity, or, in the alternative, that she was ever incapacitated from performing her parental duties. To the contrary, the court terminated Mother's parental rights under Section 2511(a)(2) due to her neglect and/or refusal to comply with her FSP objectives related to obtaining housing, a bonding evaluation, mental health treatment, and providing consents for the Children's medical treatment. We discern no

---

[5] The record reveals that Mother was diagnosed with an anxiety disorder in 2011. *See* Trial Court Opinion, 12/10/14, at 8.

abuse of discretion by the trial court. Indeed, Mother's repeated neglect or refusal to comply with her FSP objectives has caused the Children to be without essential parental care, control, or subsistence for their physical or mental well-being since 2010. Further, the causes of Mother's neglect or refusal cannot or will not be remedied. Therefore, Mother's issues on appeal fail.

Although Mother does not present an issue on appeal with respect to Section 2511(b), in light of the requisite bifurcated analysis, we consider it. *See In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (addressing Section 2511(b) although "Mother does not expressly challenge the trial court's determination that termination would best serve C.L.G."). Our Supreme Court has explained that, "the mere existence of a bond or attachment of a child to a parent will not necessarily result in the denial of a termination petition." *In re T.S.M.*, *supra*. The Court further stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *Id.* at 268 (citation omitted).

In considering the affection a child may have for his or her natural parents, this Court has stated the following.

> [C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare

- 14 -

child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent. …. Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and its mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted).

[I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015), *quoting In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).

Instantly, the trial court concluded that "because there was not a strong bond between Mother and her [C]hildren, terminating Mother's parental rights would not cause the [C]hildren irreparable harm and would be in the best interest of the [C]hildren pursuant to 23 Pa.C.S.A. § 2511(b)." Trial Court Opinion, 12/10/14, at 14. We discern no abuse of discretion by the trial court.

The trial court based its decision on the testimony of DHS workers, Carr-Hermitt and Griffin "concerning the lack of relationship between Mother and her children in contrast to the bond that exists between [the Children] and their respective foster parents." *Id.* at 14; *see also id.* at 15 (citing relevant testimonial evidence). Further, the trial court found credible the testimony of Lahara and Griffin that, "[the Children] would not suffer irreparable harm if Mother's parental rights were terminated[.]" *Id.* at 15. Upon careful review, the testimony of Carr-Hermitt, Griffin, and Lahara supports the trial court's conclusion that terminating Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of the Children. We further note that the Children's right to a permanent and safe environment has been delayed far too long in this case. *See In re B.,N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (stating "a parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to fulfill his or her parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment"), *appeal denied*, 872 A.2d 1200 (Pa. 2005).

Based on the foregoing, we affirm the October 10, 2014 decrees involuntarily terminating Mother's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(2) and (b).

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/15/2015