J-A09010-17

2017 PA Super 207

| | |
|---|---|
| CAROL J. HARVEY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| RICHARD H. HARVEY | |
| Appellant | No. 1466 MDA 2016 |

Appeal from the Decree August 31, 2016
In the Court of Common Pleas of York County
Civil Division at No(s): 2013-FC-1193-02
2013-FC-1193-15

BEFORE:  SHOGAN, J., OTT, J., and STABILE, J.

OPINION BY OTT, J.:                                    **FILED JULY 03, 2017**

Richard H. Harvey (Husband) appeals from the Decree in Divorce entered August 31, 2016, in the Court of Common Pleas of York County, that severed the bonds of matrimony between the parties, and made final and appealable the equitable distribution orders entered January 23, 2014, and April 25, 2016.  Husband contends: (1) The Honorable Harry Ness abused his discretion and committed an error of law in his Order, dated January 17, 2014, and entered January 23, 2014, wherein he determined the marital residence was marital property subject to equitable distribution; and (2) The Honorable N. Christopher Menges abused his discretion and committed an error of law in his Order, dated and entered April 25, 2016, wherein he awarded Carol J. Harvey (Wife) 60 percent of the escrowed funds from the sale of the marital residence, and 40 percent to Husband.  ***See*** Husband's

Brief at 4. Based upon the following, we affirm the Decree in Divorce, vacate the Orders of January 23, 2014, and April 25, 2016, and remand to the trial court for an order awarding each party 50% of the escrowed proceeds from the sale of the marital residence.

Both issues raised in this appeal concern the marital residence. On June 29, 1993, prior to their marriage, the parties purchased the marital residence as joint tenants with the right of survivorship. Subsequently,

[t]he parties were married on September 10, 1993.[1] On September 2, 1993, the parties entered into a valid prenuptial agreement. [Wife] reviewed the prenuptial agreement with Attorney Robert Stickler prior to signature.

[Wife] is seventy-two (72) years old. [Wife] suffers from diabetes, fibromyalgia, osteoarthritis and high blood pressure and takes multiple medications for these conditions. [Wife] has medical insurance coverage through Medicare and secondary insurance coverage through Aetna.

[Husband] is seventy-eight (78) years old. [Husband] suffers from coronary artery disease, peripheral neuropathy, and spinal problems and takes multiple medications for these conditions.

Both parties are currently retired. [Wife] is on a monthly fixed income from Social Security of $1,806 and three (3) Horace Mann annuities that total $934 per month. [Husband] is on a monthly fixed income from Social Security of $1,545 and PSERS pension of $2,406 per month.

The parties split all material expenses fifty-fifty (50/50) during the marriage. Specifically, from the date of the parties'

_____

[1] The marriage was Wife's third marriage, and Husband's fourth. *See* Report and Recommendation of the Master, 12/8/2015, at 2.

- 2 -

marriage until [Wife] filed for divorce, each party paid fifty (50%) of each mortgage payment. Each party paid fifty (50%) of all real estate taxes and homeowner's insurance. Each party paid fifty (50%) percent of all household utilities.

The parties equally contributed to the purchase of the marital residence. At the time the parties purchased the marital residence, [Wife] did not have fifty percent (50%) of the down payment and closing costs to contribute towards the ma[rital] residence. [Wife] therefore executed a judgment note to [Husband] in the amount of $44,169.72 representing her half of the down payment. After the parties' marriage, [Wife] sold her premarital residence and paid [Husband] in full the amount owed in full under the Judgment note.

Trial Court Opinion, 4/25/2016, at 1–3.

Wife filed a Complaint in Divorce on July 3, 2013. Thereafter, on December 6, 2013, she filed a Petition for Special Relief.

In her Petition, Wife asserted: "The parties executed a Prenuptial Agreement. The parties agree that the Prenuptial Agreement covers most of the property of the parties that would otherwise be marital. They disagree as to whether it covers the marital residence[.]" Wife's Petition for Special Relief, 12/6/2013, at ¶4.

Wife's Petition for Special Relief further stated:

The Divorce Master provided a summary of the recent proceedings in a Memorandum dated December 3, 2013 as follows:

At the [Discovery Conference], the parties advised that there is a valid Antenuptial Agreement in this case. While the parties agree that the Agreement is valid, they disagree as to the interpretation of it. Husband argues that the agreement precludes the creation of marital property and equitable distribution. He further argues that the marital residence was purchased by the parties prior to marriage and thus is excluded per the agreement. Wife

- 3 -

argues that when the marital residence was deeded to the parties as tenants by the entirety during the marriage, it constituted a gift to the marital estate and became marital property subject to equitable distribution. If the court interprets the agreement in the same manner as Wife, Husband's separate estate will be relevant and thus, discovery regarding it appropriate. If, however, the court interprets the agreement in the same manner as Husband, then discovery is not appropriate. Therefore, the master will place the discovery appointment on hold while the parties seek a determination of the appropriate interpretation of the agreement.

*Id.* at ¶6.

Wife averred that "[t]he marital residence was purchased by the parties as joint tenants with a right of survivorship just prior to the marriage", and "[a]nother Deed was executed by the parties after the marriage on September 24, 2002 as part of a refinancing that converted the marital residence into tenants in the entireties." *Id.* at ¶¶8-9. Wife requested the court's interpretation of the parties' Antenuptial Agreement, "specifically, whether the Deed executed by the parties on or about September 24, 2002 constituted a gift to the marriage making the marital residence marital property subject to [the equitable] distribution." *Id.* (Wherefore Clause).

A hearing on the Petition was scheduled for January 16, 2014. On January 15, 2014, Wife filed a Memorandum of Law, and Husband filed a Brief in Support of Terms of Antenuptial Agreement.

In advance of the hearing, the parties entered into a Stipulation of Facts for the January 16, 2014, hearing.[2] The Stipulation set forth, in relevant part:

7. The parties were married on September 10, 1993 in York, Pennsylvania.

8. On September 2, 1993 the parties executed an Antenuptial Agreement, a copy of which is attached hereto and incorporated herein as Exhibit "A".

…

12. The parties jointly purchased the marital residence on June 29, 1993 in anticipation of their marriage. The June 29, 1993 deed names the parties as Richard H. Harvey and Carol J. Baker (Wife's prior name) as joint tenants with the right of survivorship.

13. At the time the parties purchased the residence, Wife did not have 50% of the down payment and closing costs to contribute toward the marital residence. Wife therefore executed a Judgment Note to Husband in the amount of $44,169.72 representing her half of the down payment and closing costs for the purchase of the marital residence.

14. After the parties' marriage, Wife sold her premarital residence and paid Husband in full the amount owed in full under the Judgment Note.[3]

---

[2] *See* Joint Stipulation of Facts, 6/26/2015, at ¶5 and Exhibit "C" ("On or about January 16, 2014, the parties through counsel agreed to a Joint Stipulation of Facts for a January 16, 2014 hearing before Judge Ness regarding [Wife's] Petition for Special Relief. A true and correct copy of this Stipulation is attached hereto as Exhibit "C" and incorporated herein by reference.").

[3] The record does not disclose the date of the sale of Wife's premarital residence and the date of her satisfaction of the judgment note.

15. The marital residence was subject to a mortgage when the parties purchased the marital residence.

16. On September 24, 2002 the parties refinanced the house and obtained a lower interest rate. The September 24, 2002 mortgage was in the amount of $87,000.

17. At the time that the parties refinanced the marital residence on September 24, 2002, the parties executed a new deed to the marital residence and the grantee clause reads: "Richard H. Harvey, Sr. and Carol J. Harvey, husband and wife, of Manchester Township, York County, Pennsylvania." From the date of the parties' marriage until Wife filed the Complaint for Divorce, each party paid 50% of each mortgage payment. Each party paid 50% of all real estate taxes and homeowner's insurance. Each party paid 50% of all household utilities.

Joint Stipulation of Facts, 6/26/2015, Exhibit "C" (Stipulation of Facts for January 16, 2014 Hearing, at ¶¶7-8, 12–17).

The hearing on Wife's Petition was held on January 16, 2014. The trial judge, the Honorable Harry Ness, determined that if testimony was unnecessary, an order would be entered based on the briefs and stipulation of facts. *See* N.T., 1/16/2014, at 2. Thereafter, counsel presented legal argument to the court, and the trial judge confirmed with counsel he would enter an opinion based upon the joint stipulation of facts. *Id.* at 8-9.

By order dated January 17, 2014, and entered January 23, 2014, Wife's Petition was granted, as follows:

1. The parties' marital residence … constitutes marital property subject to equitable distribution;

2. The matter is remanded to the York County Divorce Master's Office. The parties shall proceed as appropriate before the same; and

3. The parties' marital residence … shall be listed for sale within thirty (30) days of the date of this Order.

Order, 1/23/2014.

The opinion accompanying the trial court's order explained that when the parties refinanced the mortgage on September 24, 2002, and executed a new deed that changed the parties' ownership from joint tenants with right of survivorship to tenants by the entireties, "this transfer to both parties as tenants by the entireties constituted a gift to the marital [estate]." Trial Court Opinion, 1/23/2014, at 5.[4]

Husband filed an Affidavit of Consent on October 1, 2014, and Wife filed an Affidavit of Consent on October 22, 2014. The Divorce Master issued a Report and Recommendations on December 8, 2015. The Master recommended that each party receive 50% of the escrowed proceeds from the sale of the marital residence. The Master concluded:

_____

[4] The trial judge further opined:

[O]n remand to the Divorce Master's Office, the operative and ultimate question will be what division of property will constitute as "equitable." While the predominant framework under 23 Pa. Cons. Stat. § 3502 must be evaluated when making such a determination, we suggest that it is important to consider that the plain language of the [Antenuptial] Agreement seems to indicate that the parties intended to have a fifty-fifty allocation of property between them. We believe that such intent extended to the marital residence and should have weight in the Master's decision.

Trial Court Opinion, 1/23/2014, at 6.

> Just as each party contributed 50% to the purchase, the mortgage, insurance, taxes and utilities throughout the course of their marriage, and, given all facts as presented, and factors as considered under Section 3502(a) of the Divorce Code, each party should take 50% of the escrowed proceeds from the sale of the marital home. To skew this distribution to Wife's favor and not Husband's in any greater amount, this Master would find to be anything but equitable under the specific facts and circumstances of this case.

Master's Report, 12/08/2015, at 17.

Wife filed exceptions on December 28, 2015, and Husband filed an Answer to Wife's Exceptions on January 27, 2016. On April 25, 2016, the Honorable N. Christopher Menges denied Wife's exceptions in part, and granted the exceptions in part, and divided the marital property 60/40, awarding 60% of the escrowed funds from the sale of the marital residence to Wife and the remaining 40% to Husband. On August 31, 2016, the trial court issued the final decree in divorce, and this appeal followed.[5]

In his first issue, Husband challenges the Order entered January 23, 2014. Specifically, Husband contends Judge Ness abused his discretion and committed an error of law in determining Husband made a gift of his equity in the marital residence when the parties refinanced the mortgage on the residence in September of 2002, and executed a new deed that changed the parties' ownership from joint tenants with right of survivorship to tenants by the entireties.

---

[5] Husband filed a concise statement pursuant to Pa.R.A.P. 1925(b) together with his notice of appeal.

This claim centers on the trial court's interpretation of the Antenuptial Agreement with regard to the marital residence. Therefore, the following legal principles guide our review:

> The determination of marital property rights through prenuptial, post-nuptial and settlement agreements has long been permitted, and even encouraged. Where a prenuptial agreement between the parties purports to settle, fully discharge, and satisfy any and all interests, rights, or claims each party might have to the property or estate of the other, a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. We will not usurp the trial court's fact-finding function.
>
> ****
>
> As to interpretation, enforcement, and remedies, in Pennsylvania, antenuptial agreements are interpreted in accordance with traditional principles of contract law. Generally, the parties are bound by their agreements, absent fraud, misrepresentation or duress. They are bound without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains.
>
> When interpreting an antenuptial agreement, the court must determine the intention of the parties. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement. Where ambiguity exists, however, the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing.

**Sabad v. Fessenden**, 825 A.2d 682, 686, 688 (Pa. Super. 2003) (quotations and citations omitted).

Where property or an account is placed in the names of a husband and wife, a gift and the creation of an estate by the entireties is presumed even though the funds used to acquire the property or to establish the account were exclusively those of the husband[.] … In order to overcome the presumption that an estate by the entireties exists and that a complete gift ensued therefrom, there must be clear, and convincing evidence to the contrary.

*Holmes Estate*, 200 A.2d 745, 747 (Pa. 1964) (citation omitted).

Here, there is no dispute regarding the validity of the Antenuptial

Agreement.  Therein, the parties agreed:

WHEREAS, each party has agreed by virtue of the terms of this Agreement to waive the impact of the marital contract on the assets of each other owned at the time of the marriage and subsequently acquired after the date of the marriage; and

WHEREAS, each of the parties by virtue of this Agreement hereby agrees to waive the right to any increase in value of any property owned by the parties at the time of marriage or which may be acquired by them subsequent to the marriage by virtue of gift, bequest, devise of descent.

NOW THEREFORE, in consideration of the mutual covenants and disclosures herein contained, their intended marriage, and intending to be legally bound hereby, the parties hereto agree as follows:

****

4. Nothing herein shall be construed as preventing either of the parties from giving any of his or her property or estate to the other by deed, gift, will or otherwise. Provided, nevertheless, that with regard to the real or personal property interest of the parties no gift of the assets of either one will be recognized as valid unless the same is executed in writing or evidenced in writing.

5. After the solemnization of their prospective marriage, each party shall separately retain all rights in his or her own property whether now owned and/or hereafter acquired irrespective of the

source or manner in which such property may be acquired. Each of them shall have the absolute and unrestricted right to dispose of such property during his or her lifetime and upon death free from any claim that may be made by the other by reason of their marriage and with the same effect as if no marriage had been solemnized between them. The provisions of this paragraph shall be fully applicable even though the pertinent laws providing for marital rights may change after the execution of this Agreement with the result that presently existing rights may be reduced, eliminated or expanded and new rights may come into being. The provision of this paragraph specifically waives the definition of marital property under the prevailing Pennsylvania "Divorce Code" as to Section 401(e) Subparagraphs (2) and (3)[6] ….

6. Each party does hereby waive and relinquish any and all rights which he or she might otherwise have thereto or therein as spouse or surviving spouse of the other under present statutes or under statutes hereinafter in effect in any jurisdiction or by virtue of the divorce laws of this or any other jurisdiction whether by way of property settlement, equitable distribution, alimony, support, alimony pendente lite, maintenance and care, a distributive share in the event of intestacy, the right of election to take against a will or against an estate, the right to act as administrator or executor, dower, curtesy, or otherwise, and each of the parties does hereby release all rights whatsoever which he or she might now have or hereafter otherwise acquire in said property of the other by reason of the contemplated marriage between them.

Antenuptial Agreement, 9/2/1993, at 1–4.

Judge Ness found that based on Paragraph 6 of the Antenuptial Agreement, "on its face, the Agreement seems to preclude classifying the marital residence as marital property subject to equitable distribution." Trial Court Opinion, 1/23/2014, at 3. However, he further reasoned:

_____

[6] 23 P.S. § 401(e) had been repealed at the time the parties executed the Antenuptial Agreement. **See** 23 Pa.C.S. § 3501.

- 11 -

Title 23, Section 3501 of the Pennsylvania Consolidated Statutes excludes from the definition of marital property, in relevant part, the following:

(2) Property excluded by valid agreement of the parties entered into before, during or after the marriage.

(3) Property acquired by gift, except between spouses, bequest, devise or descent or property acquired in exchange for such property.

23 Pa. Cons. Stat. Ann. § 3501(a).

Our sister court has indicated that "[w]here a marital residence that has been purchased with the sole funds of one spouse prior to the marriage is transferred during the parties' marriage to both spouses jointly as tenants by the entireties a gift to the marital estate is created". **Burry v. Burry**, 28 Pa. D. & C.3d 579 (Montgomery Ct. Comm. Pl. 1982). Absent clear and convincing evidence refuting this presumption, the value of the marital residence constitutes marital property subject to equitable distribution. **See Id.**

In determining what constitutes adequate evidence to the contrary, our Superior Court in **Lowry v. Lowry** rejected a husband's argument that his only intent in placing property in a tenancy by the entireties was to prevent his former spouse from taking the property. **Lowry v. Lowry**, 544 A.2d 972, 977 (Pa. Super. Ct. 1988). The Court indicated that "the fact that there is some financial gain to be had by the gifting spouse as a result of the gift, like a reduction in taxes, does not negate donative intent, but rather positively suggests it." **Id.** Thus, "[t]he desire to achieve the financial goal is the source of the donative intent that supports a finding of a gift." **Id.**[7]

_____

[7] We clarify the facts of **Lowry**, as follows. In **Lowry**, the husband transferred his interest in real property purchased after marriage and held in joint names into wife's name alone. **Lowry**, 544 A.2d at 975. In discussing the husband's argument that he did not have donative intent because his purpose was not to exclude the property from marital property, but rather to shield the property from his former spouse, this Court held "the fact that there is some financial gain to be had by the gifting spouse as a result of the

*(Footnote Continued Next Page)*

In the case at bar, parties stipulate that, when refinancing the marital residence on September 24, 2002, the parties executed a new deed to the marital residence which changed the parties' ownership of the property from joint tenants with the rights of survivorship to tenants by the entireties. **See** Stipulation of Facts, ¶¶ 12, 17. We find that this transfer to both parties as tenants by the entireties constituted a gift to the marital residence [sic]. Our finding is supported by not only the weight of prior authority, but also by the Agreement. Paragraph [F]our of the same indicates that:

> Nothing herein shall be construed as preventing either of the parties from giving any of his or her property or estate to the other by deed, gift, will or otherwise. Provided nevertheless, that with regard to the real or personal property interest of the parties, no gift of the assets of either one will be recognized as valid unless the same is executed in writing or evidenced in writing.

Such language indicates that the parties' intent was to allow latitude for gifts between themselves. [Husband] does not indicate why the transfer of the marital residence lacks donative intent, but rather argues that the Agreement precludes the marital residence being treated as marital property subject to equitable distribution entirely.[8] **See** [Husband's] Brief in Support of Terms of the Ante-Nuptial Agreement. [Husband] therefore has not come forward with sufficient evidence to rebut the presumption that the transfer of the marital residence to the

*(Footnote Continued)* _____

gift, like a reduction in taxes, does not negate donative intent, but rather positively suggests it." **Id.** at 977.

**Lowry** also involved the wife's transfer of $13,000.00 from her personal savings account into a joint savings account in both parties' names. In this regard, this Court held: "Where a spouse places separate property in joint names, a gift to the entireties is presumed absent clear and convincing evidence to the contrary." **Id.** at 978.

[8] As will be discussed more fully below, Husband's Brief in Support of Terms of Antenuptial Agreement, filed on January 15, 2014, **does** address donative intent.

parties as tenants by the entireties constitutes a gift to the marital estate. Accordingly, we find that the parties' marital residence constitutes marital property that is subject to equitable distribution under Pennsylvania law.

Trial Court Opinion, 1/23/2014, at 4–6.

Based on our review, we find that the trial judge misapplied the law in concluding that, under the facts of this case, Husband failed to rebut the presumption that the transfer of the marital residence to the parties as husband and wife constituted a gift to the marital estate, making it marital property.

Because the parties jointly acquired the marital residence prior to their marriage and owned the property as joint tenants with the right of survivorship at the time the new deed was executed, donative intent in the creation of a tenancy by the entireties is a **mutual issue**. However, Wife's Petition for Special Relief makes no averment regarding her own donative intent in signing the new deed. Rather, the question presented by the Petition was "whether the [d]eed executed by the parties on or about September 24, 2002 constituted a gift to the marriage making the marital residence marital property[.]" Wife's Petition for Special Relief (Wherefore Clause).

However, at the Master's hearing that was held following Judge Ness's determination that the marital residence was marital property subject to equitable distribution, Wife testified the new deed was executed because (1) her name changed, and (2) the bank required it. ***See*** N.T., 9/10/2015, at

The parties, through counsel, stipulated that the parties "didn't discuss whether it was or was not a gift." *Id.* at 101. The parties, through counsel, also stipulated that "the parties signed this deed because the bank required it for purposes of refinancing the loan on the marital residence." *Id.* at 101.[9]

Furthermore, when the issue came before Judge Ness, Husband disputed donative intent, stating:

> The parties' action in executing a deed on September 24, 2002 was not to make a gift to the marriage. The sole reason for the deed was to have title in the property match the names on the mortgage that was to be entered into. Without the refinancing, the deed never would have been executed.

Husband's Brief in Support of Terms of Antenuptial Agreement, 1/15/2014, at 7. The record supports Husband's position.

It is important to note that in **Burry, supra**, cited in the trial court's opinion, the marital residence was purchased by one spouse prior to the marriage, and transferred after the marriage to both spouses as tenants by the entireties. Here, however, both parties acquired the marital residence prior to the marriage as joint tenants with right of survivorship.[10] As such,

_____

[9] While this testimony was presented to the Master on the issue of equitable distribution, the orders of Judge Ness and Judge Menges are intertwined in this case.

[10] As discussed above, the parties stipulated that at the time the parties purchased the marital residence, Wife executed a Judgment Note to Husband in the amount of $44,169.72 representing her half of the down

*(Footnote Continued Next Page)*

the subsequent change of ownership in this case, to a tenancy by the entireties, was not an acquisition of property by either party. Here, both parties jointly owned the whole property with right of survivorship before and after the change in the deed. *See Madden v. Gosztonyi Sav. & Tr. Co.*, 200 A. 624, 627–628 (Pa. 1938) (stating that "a tenancy by entireties resembles a common law joint tenancy in that each spouse owns the whole and therefore is entitled to enjoyment of the entirety and to survivorship[;] it differs in that neither one has any individual portion which can be alienated or separated, or which can be reached by the creditors of either spouse.").

It is also important to note that in *Lowry, supra*, the husband transferred property held in both spouses' names to his wife's name for financial protection from his former spouse, thereby evidencing a financial gain that this Court concluded "positively suggest[ed]" donative intent. *Lowry*, 544 A.2d at 977. Further, the husband stated his intent was to prevent his former spouse from taking the property. *Id.* at 977. Here, however, even though the parties refinanced to obtain a lower interest rate, the new deed was executed as required by the bank to reflect Wife's current

_____
*(Footnote Continued)*

payment and closing costs for the purchase of the marital residence, and repaid this amount to Husband after the marriage when she sold her premarital residence.

married name. Thus, the signing of the new deed does not establish donative intent on the part of Husband or Wife.

Furthermore, the parties continued their arrangement that "each party paid 50% of each mortgage payment," "[e]ach party paid 50% of all real estate taxes and homeowner's insurance," and "[e]ach party paid 50% of all household utilities."[11] This 50/50 allocation of expenses between the parties also contradicts donative intent to make a gift to the marital estate.

In sum, we find that the facts established by the Joint Stipulation of Facts for January 16, 2014 Hearing — that the parties jointly owned the marital residence as joint tenants with right of survivorship prior to the marriage, that the new deed transferring ownership of the marital property to the parties as "husband and wife" was executed as part of the refinancing process, and that during the entire marriage until Wife filed the Complaint in Divorce the parties paid 50% of each mortgage payment, and paid 50% of all expenses related to the marital residence — are clear and convincing evidence that rebuts the presumption of a mutual gift of the marital residence in the creation of a tenancy by the entireties. **See Holmes, supra**. Accordingly, we vacate the Order entered January 23, 2014.

_____

[11] Joint Stipulation of Facts, 6/26/2015, Exhibit "C" (Stipulation of Facts for January 16, 2014 Hearing, at ¶17).

The second issue raised by Husband challenges the April 25, 2016, Order of Judge Menges that resolved the issue of equitable distribution of the marital property by fashioning a 60%/40% distribution scheme in favor of Wife.

Because we have vacated the Order of January 23, 2014, it follows that the Order of April 25, 2016, regarding equitable distribution of the marital residence pursuant to the Divorce Code, cannot stand. Nevertheless, if we were to address Husband's second issue, we would find merit in Husband's contention that the trial court abused its discretion in ordering a 60/40 division of the marital property.

The Divorce Code provides that it is the policy of the Commonwealth to "[e]ffectuate economic justice between parties who are divorced or separated . . . and insure a fair and just determination and settlement of their property rights." 23 Pa.C.S. § 3102(a)(6).

In reviewing equitable distribution orders,

> [our standard] of review . . . is limited. It is well established that absent an abuse of discretion on the part of the trial court, we will not reverse an award of equitable distribution. [In addition,] when reviewing the record of the proceedings, we are guided by the fact that trial courts have broad equitable powers to effectuate [economic] justice and we will find an abuse of discretion only if the trial court misapplied the laws or failed to follow proper legal procedures. [Further,] the finder of fact is free to believe all, part, or none of the evidence and the Superior Court will not disturb the credibility determinations of the court below.

- 18 -

We do not evaluate the propriety of the distribution order upon our agreement with the court['s] actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole, in light of the court's overall application of the [23 Pa.C.S.A. § 3502(a)] factors [for consideration in awarding equitable distribution]. If we fail to find an abuse of discretion, the [o]rder must stand.

*Lee v. Lee*, 978 A.2d 380, 382-383 (Pa. Super. 2009) (citations omitted).

Here, the trial court, in fashioning the 60/40 distribution scheme, pointed to the "disparity in the parties' individual assets,"[12] and concluded that "[a]fter twenty (20) years of marriage, to consign Wife to such a substantially lower standard of living goes contrary to the social policies and legislative intent of the Divorce Code."[13] However, the trial court overlooked the fact that the only marital asset in this case is the marital residence, and that throughout the marriage the parties each paid 50 percent of the related expenses, including the purchase price, mortgage payments, real estate taxes, homeowner's insurance and utilities.

We conclude "economic justice" and "a fair and just determination and settlement" require that neither party benefit to the detriment of the other with regard to the equitable distribution of this marital property. 23 Pa.C.S. § 3102(a)(6). As the Master recognized in recommending a 50/50 division of the escrowed proceeds from the sale of the marital residence, "[t]o skew

_____

[12] Trial Court Opinion, 4/25/2016, at 15.

[13] *Id.* at 14.

- 19 -

this distribution to Wife's favor and not Husband's in any greater amount, … would … be anything but equitable under the specific facts and circumstances of this case."  Report and Recommendation of the Master, 12/8/2015, at 17.

Accordingly, based on the above discussion, we affirm the Decree in Divorce, vacate the Orders of January 23, 2014, and April 25, 2016, and remand to the trial court for an order awarding each party 50% of the escrowed proceeds from the sale of the marital residence.

Decree in Divorce affirmed; Equitable Distribution Orders of January 23, 2014, and April 25, 2016, vacated.  Case remanded.  Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/3/2017