J-A01024-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| LOUISE M. DUELFER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| STEVEN JAMES DUELFER, | |
| Appellant | No. 1322 EDA 2017 |

Appeal from the Decree April 11, 2017
in the Court of Common Pleas of Lehigh County
Civil Division at No.: 2008-FC-0617

| | |
|---|---|
| LOUISE M. DUELFER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| STEVEN JAMES DUELFER, | |
| Appellee | No. 1419 EDA 2017 |

Appeal from the Decree April 11, 2017
in the Court of Common Pleas of Lehigh County
Civil Division at No.: 2008-FC-0617

BEFORE:  LAZARUS, J., OTT, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 22, 2018**

In these consolidated cross appeals, Steven James Duelfer (Husband),

and Louise M. Duelfer (Wife), appeal from the trial court's orders interpreting

_____

[*] Retired Senior Judge assigned to the Superior Court.

certain provisions of their antenuptial agreement (Agreement), and overruling their exceptions to the report filed by the Divorce Master, as made final by the court's entry of a divorce decree.[1] We reverse the trial court's order overruling the exceptions in part, and affirm in all other respects.

We take the following relevant facts and procedural history of this case from our independent review of the record. The parties executed the Agreement on November 5, 1997, and they married a few days later. Wife filed a complaint in divorce on May 15, 2008, raising claims for equitable distribution and alimony. On June 9, 2008, Husband filed a petition for special relief, seeking an interpretation of certain provisions of the Agreement. The Agreement provides, in pertinent part:

> **2. FULL DISCLOSURE OF ASSETS.** [Husband] and [Wife] agree that they have made a full and complete disclosure of their assets, income, and debts to the other. A complete inventory of the assets and liabilities of [Husband] is attached hereto as Exhibit "A".[2] A complete inventory of the assets and liabilities of [Wife] is attached hereto as Exhibit "B". . . .

---

[1] A pre-divorce order is interlocutory and unappealable before the court enters a divorce decree. **See Campbell v. Campbell**, 516 A.2d 363, 365–66 (Pa. Super. 1986), *appeal denied*, 528 A.2d 955 (Pa. 1987).

[2] Husband is the owner, sole shareholder, and president of an S Corporation called Equus Systems, Inc. Exhibit A to the Agreement lists his assets as follows:

| | |
|---|---|
| Bank account | $3,000.00 |
| Equus Systems Capital Stock | $1,000.00 |
| Personal Loan invested in Equus | $128,000.00 |
| Equus Computer Equipment | $7,500.00 |

**3. <u>RETENTION OF SEPARATE PROPERTY</u>.**

A. Each party shall, except as otherwise provided, during his or her remaining lifetime, retain sole ownership of all of his or her respective Separate Property, and shall have the exclusive right to dispose of any and all such Separate Property during his or her remaining lifetime by *inter vivos*, or by any and all other dispositions, and/or to encumber, pledge, or sell, transfer or hypothecate the same, without any interference by or the necessity of the joinder of the other, in such manner as shall be determined in the sole discretion of such owner thereof, as if the aforesaid marriage had not taken place.

B. **For all purposes of this Agreement as used herein the term "Separate Property" shall mean**, with respect to a party hererto, all of such party's right, title and interest, legal or beneficial, in and to any and all property and interests in property, real, personal or mixed, whatever situated and regardless of how titled, **which each of the parties owned or had a beneficial interest in at the time of marriage as set forth and delineated on Schedules A and B attached hereto**.

C. **"Separate Property" shall also mean**: (a) any increase or appreciation in value of **such** property, whether the increase, appreciation or enhancement is due to market conditions or to the services, skills or efforts of either of the parties; (b) all property acquired hereafter by either party out of the proceeds from the sale, transfer, mortgaging or use of any **such** separate property.

\*     \*     \*

**7. <u>POSSIBLE TERMINATION OF MARRIAGE</u>.** . . .

\*     \*     \*

---

| | |
|---|---|
| Brokerage Account (July, 1997 statement) | $51,800.00 |
| IRA (Sept., 1997 statement) | $25,700.00 |
| SEP IRA (Sept., 1997 statement) | $6,600.00 |
| Car | $1,000.00 |

(Agreement, at 14, Exhibit "A").

**B. EQUITABLE DISTRIBUTION.** In the event that the marriage of the parties is terminated by a divorce, dissolution or annulment, the parties specifically agree as follow[s]:

(1) [Husband and Wife] shall not be entitled to receive from the other any share of his/her Separate Property, as defined herein, and do hereby waive any right that he/she may have to claim equitable distribution of such Separate Property, whether or not such Separate Property shall be construed to be marital property.

(2) Except as may be otherwise herein provided, **any property acquired by the parties**, either individually or jointly, after their marriage and through the date of final separation, **except that property which was previously excluded as separate property, shall be divided equally between the parties**. Each of the parties specifically waives all other claims for division or distribution of marital property.

(Agreement, 11/05/97, at 3-4, 6-8) (emphases added).

The trial court held a hearing on the matter on June 23, 2008. "Counsel for the parties stipulated that the assets at issue were not [those] generated by the investment or growth of the funds listed as individual property, but were contributions made to the separate property from Husband's employment earnings during the marriage." (Trial Court Opinion, 7/24/17, at 2; *see also* N.T. Hearing, 6/23/08, at 5, 8-10). On November 21, 2008, the court entered an order stating:

. . . [U]pon consideration of the Petition for Special Relief filed June 9, 2008,

**IT IS ORDERED** that income earned during the marriage, but added to accounts which existed prior to the marriage, is not "separate property" as governed by 3 (b & c) of the [Agreement]; the income is governed by the "Equitable Distribution" provisions of 7 (b).

(Order, 11/21/08).

- 4 -

Following extensive proceedings before a Divorce Master, the Master issued a report on February 19, 2016. The trial court overruled the parties' exceptions thereto on July 21, 2016. It entered a final divorce decree on April 11, 2017. These timely appeals followed.[3]

Husband raises the following issues for our review:

[1]. Was the conclusion that [Husband's] "income" received from such sources as interest and dividend income from the brokerage account, commissions from the account, "SPIFF" payments, a portion of interest paid on the loan account, and other miscellaneous commissions an abuse of discretion and error of law when it constitutes income earned by [Husband] from his employment during the marriage, and should be excluded as separate property under the parties' Antenuptial Agreement?

[2]. Was the inclusion of income which was deposited to [Husband's] brokerage account and his SEP/IRA an abuse of discretion and an error of law when that income was earned by [Husband] through his services, skills, and efforts as president, sole shareholder, and sole employee of the corporation known as Equus Systems, which entity was listed as [Husband's] separate property in the parties' Antenuptial Agreement dated November 5, 1997?

[3]. Was the inclusion of increases and appreciation in value which were due to interest, dividends, enhancements and market conditions that accrued in [Husband's] brokerage account and SEP/IRA an abuse of discretion and an error of law when those accounts were listed as separate property in the parties' Antenuptial Agreement dated November 5, 1997?

(Husband's Brief, at 7).

Wife presents the following claims:

1. Whether the [c]ourt, by upholding the Master, committed an abuse of discretion or error of law by improperly calculating the

_____

[3] Husband and Wife filed timely, court-ordered concise statements of errors complained of on appeal on May 10, 2017 and June 6, 2017, respectively. The trial court issued an opinion on July 24, 2017. *See* Pa.R.A.P. 1925.

- 5 -

portion of Husband's brokerage account which was subject to Wife's fifty percent (50%) share?

2. Whether it was an error of law or abuse of discretion to use values only as of date of separation for distribution purposes rather than also considering values proximate to the hearing date, where there was a delay between the date of separation and the hearing and assets appreciated significantly during interim period[?]

3. Whether the [c]ourt, by upholding the Master, committed an abuse of discretion or error of law to the extent that transfers of property to Husband from his parents were not subject to distribution contrary to the plain language of the prenuptial agreement?

(Wife's Brief, at 6).[4]

The parties' claims center on the trial court's interpretation of the Agreement. Therefore, our review is guided by the following principles:

The determination of marital property rights through prenuptial, post-nuptial and settlement agreements has long been permitted, and even encouraged. Where a prenuptial agreement between the parties purports to settle, fully discharge, and satisfy any and all interests, rights, or claims each party might have to the property or estate of the other, a court's order upholding the agreement in divorce proceedings is subject to an abuse of discretion or error of law standard of review. An abuse of discretion is not lightly found, as it requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures. We will not usurp the trial court's fact-finding function.

\* \* \*

As to interpretation, enforcement, and remedies, in Pennsylvania, antenuptial agreements are interpreted in

_____

[4] The parties preserved their issues by including them in their exceptions to the Master's Report. (**See** Husband's Exceptions, 3/09/16, at 1-2, ¶¶ 1-3; Wife's Exceptions, 3/28/16, at unnumbered page 1, ¶¶ 1-3).

- 6 -

accordance with traditional principles of contract law. Generally, the parties are bound by their agreements, absent fraud, misrepresentation or duress. They are bound without regard to whether the terms were read and fully understood and irrespective of whether the agreements embodied reasonable or good bargains.

When interpreting an antenuptial agreement, the court must determine the intention of the parties. When the words of a contract are clear and unambiguous, the intent of the parties is to be discovered from the express language of the agreement. Where ambiguity exists, however, the courts are free to construe the terms against the drafter and to consider extrinsic evidence in so doing.

*Harvey v. Harvey*, 167 A.3d 6, 11-12 (Pa. Super. 2017) (citation omitted);

*see also Habjan v. Habjan*, 73 A.3d 630, 640 (Pa. Super. 2013) ("When construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties understanding.") (citation omitted).

On appeal, Husband argues[5] that the trial court erred by including his employment earnings in the property to be distributed between the parties. (*See* Husband's Brief, at 22-33). Husband contends that the court improperly applied the definition of separate property set forth in the Agreement by failing to classify as separate property the income he earned through his position at Equus, that he then deposited into his brokerage and SEP/IRA accounts listed

_____

[5] Although Husband frames his claims as three separate issues in the statement of the questions involved, he combines them in the argument section of his brief by incorporating each preceding argument by reference. (*See* Husband's Brief, at 7, 26, 31). The trial court treated Husband's claims as a single issue. (*See* Trial Ct. Op., at 4-5). We will therefore address his interrelated claims together for ease of disposition.

on his separate property list. (**See id.** at 23-24, 26-27, 30; **see also** *2 n.2, **supra**). He further maintains that because he earned the funds from Equus, and not from outside sources, any increase or appreciation in value of the brokerage and SEP/IRA accounts are also his separate property. (**See** Husband's Brief, at 31-33). These claims do not merit relief.

We reiterate, the Agreement defines separate property as:

**3. <u>RETENTION OF SEPARATE PROPERTY</u>.**

* * *

B.     **For all purposes of this Agreement as used herein the term "Separate Property" shall mean**, with respect to a party hererto, all of such party's right, title and interest, legal or beneficial, in and to any and all property and interests in property, real, personal or mixed, whatever situated and regardless of how titled, **which each of the parties owned or had a beneficial interest in at the time of marriage as set forth and delineated on Schedules A and B attached hereto**.

C.     **"Separate Property" shall also mean**: (a) any increase or appreciation in value of **such** property, whether the increase, appreciation or enhancement is due to market conditions or to the services, skills or efforts of either of the parties; (b) all property acquired hereafter by either party out of the proceeds from the sale, transfer, mortgaging or use of any **such** separate property.

(Agreement, at 3-4, ¶¶ 3B, C) (emphases added).

Pursuant to paragraph 7B(2) of the Agreement, all other property acquired during the marriage through the date of separation is to be divided equally between the parties. (**See id.** at 7-8, ¶ 7B(2)).

As previously outlined, Husband maintains that his income earned through Equus is his separate property under the definitions set forth above.

However, Schedule A to the Agreement, referenced in paragraph 3B, ***supra***, delineated only three items related to Equus—capital stock ($1,000.00), a personal loan invested in the company, and computer equipment. (***See*** *2 n.2, ***supra***). Thus, Schedule A, on its face, does not purport to cover Husband's future income earned at Equus. Therefore, the income is not property "which [Husband] owned or had a beneficial interest in at the time of marriage as set forth and delineated on Schedule[] A[,]" and does not fit within the definition of "Separate Property" set forth at paragraph 3B of the Agreement. (Agreement, at 4 ¶ 3B). Furthermore, at the hearing on this matter, counsel for Husband stipulated that the income at issue was "earned from other sources than the separate property list." (N.T. Hearing, 6/23/08, at 9).

Husband's attempt to fit his income within the definition of paragraph 3C likewise fails. (***See*** Husband's Brief, at 31-33). That provision, through the repeated use of the word "such," directly refers back to the property expressly set forth by the parties on their respective schedules. (Agreement, at 4 ¶ 3C). As discussed, Schedule A lists only three very specific items related to Equus, and does not cover Husband's income. (***See*** *2 n.2, ***supra***).

Accordingly, we conclude, based on the clear and unambiguous terms of the Agreement, that the trial court did not err or abuse its discretion in determining that Husband's earnings were not separate property, and that his placement of those joint funds into his brokerage and SEP/IRA accounts did not convert them into separate property. ***See Harvey***, ***supra*** at 11–12;

- 9 -

***Habjan***, ***supra*** at 640; (***see also*** Trial Ct. Op., at 5).  Therefore, Husband's claims do not merit relief.

We now turn to the questions raised by Wife on cross appeal.  Wife first challenges the trial court's calculation of the marital portion of Husband's brokerage account.  (***See*** Wife's Brief, at 12-13).  She argues that the court improperly deferred to the Master's valuation, when both of the parties' experts set the value at a higher amount.  (***See id.*** at 13).  This issue is waived.

"The Rules of Appellate Procedure state unequivocally that each question an appellant raises is to be supported by discussion and analysis of pertinent authority.  Pa.R.A.P. 2119(b).  Failure to do so constitutes waiver of the claim." ***Giant Food Stores, LLC v. THF Silver Spring Dev., L.P.***, 959 A.2d 438, 444 (Pa. Super. 2008), *appeal denied*, 972 A.2d 522 (Pa. 2009) (case citations and internal quotation marks omitted).

Here, in her underdeveloped argument spanning one and one-half pages, Wife has failed to include any citation to legal authority in support of her assertion that the trial court should have accepted the consensus valuation of the experts, instead of the calculation of the Master.  (***See*** Wife's Brief, at 12-13).  Therefore, Wife's first issue is waived.  ***See Giant Food Stores***, ***supra*** at 444.[6]

---

[6] Moreover, it would not merit relief.  In valuing marital assets, the trial court must exercise discretion and rely on the information submitted by the parties.

Wife next challenges the trial court's determination that she is not entitled to any amount for the post-separation appreciation of the brokerage account. (**See** Wife's Brief, at 13-19). She argues that this finding is contrary to the general rule that assets should be valued as close to distribution as possible, and not at the date of separation. (**See id.** at 14). This claim does not merit relief.

Although Wife is correct that, generally, the preferred date of valuation of an asset is the date of distribution and not the date of separation,[7] the rights of the parties in the instant case are governed by the Agreement. As noted, the term pertaining to equitable distribution provides:

**B. EQUITABLE DISTRIBUTION.**

\* \* \*

---

**See Carney v. Carney**, 167 A.3d 127, 131 (Pa. Super. 2017). "However, this Court has consistently held that, [i]n determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property." **Id.** at 132 (citations and internal quotation mark omitted). It is also well-settled that a master's report and recommendation, although only advisory, is to be given the utmost consideration. **See id.** at 131.

Here, the Master determined that the conclusions reached by the parties' experts regarding the marital portion of the brokerage account were not accurate, nor were they consistent with the trial court's order interpreting the Agreement, and he set forth his own detailed calculation. (**See** Master's Report, 2/19/16, at 26, 31-32). The trial court declined to disturb the Master's findings in this regard. (**See** Trial Ct. Op., at 6). Upon review, we discern no abuse of discretion. Wife's first issue would not merit relief, even if it were not waived.

[7] **See Nagle v. Nagle**, 799 A.2d 812, 820-21 (Pa. Super. 2002), *appeal denied*, 820 A.2d 162 (Pa. 2003).

- 11 -

(2) Except as may be otherwise herein provided, any property acquired by the parties, either individually or jointly, after their marriage and **through the date of final separation**, except that property which was previously excluded as separate property, shall be divided equally between the parties. **Each of the parties specifically waives all other claims for division or distribution of marital property**.

(Agreement, at 7-8, ¶ 7B(2)) (emphases added).

In light of the foregoing provision, we agree with the trial court that the date of accounting for the marital portion of the brokerage account is the date of separation. (**See** Trial Ct. Op., at 5). Wife is bound by the Agreement's clear terms. **See Harvey**, **supra** at 11-12. Therefore, her second issue merits no relief.

In her final issue, Wife argues that the Master erroneously found that gifts from Husband's parents deposited into his brokerage account (totaling $40,800.00) were his separate property. (**See** Wife's Brief, at 19-21; **see also** Master's Report, at 24 ¶ 126, 25 ¶ 129, 26 ¶ 135; Master's Hearing, 4/17/14, at 100). Upon review, we agree.

We again set forth the relevant language of the Agreement:

**B. EQUITABLE DISTRIBUTION.**

\* \* \*

(2) Except as may be otherwise herein provided, **any property acquired by the parties, either individually or jointly**, after their marriage and through the date of final separation, **except that property which was previously excluded as separate property**, shall be divided **equally** between the parties. Each of the parties specifically waives all other claims for division or distribution of marital property.

(Agreement, at 7-8, ¶ 7B(2)) (emphases added).

Applying the plain language of this provision, the gifts from Husband's parents qualify as "**any** property acquired by the parties" while they were married, and the gifts were not "previously excluded as [Husband's] separate property" on Schedule A to the Agreement. (***Id.*** (emphasis added); ***see also*** *2 n.2, ***supra***). Therefore, we are constrained to conclude that the Master and the trial court erred in classifying the gifts as Husband's separate property. Accordingly, we remand to the trial court for the limited purpose of awarding Wife fifty percent of the date of separation value of the gifts.

Divorce decree and November 21, 2008 order affirmed. Order overruling exceptions reversed in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/22/18