J-A11034-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| TERRENCE WHITMIRE | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DIANE WHITMIRE | : | |
| | : | |
| Appellant | : | No. 957 MDA 2019 |

Appeal from the Decree Entered April 29, 2019
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
17936 of 2010

BEFORE:   PANELLA, P.J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED JULY 31, 2020**

Diane Whitmire ("Wife") appeals from the divorce decree entered by the Court of Common Pleas of Luzerne County, which provided for the equitable distribution of the marital assets of Wife and Terrence Whitmire ("Husband"). Wife claims the trial court abused its discretion in valuing the marital residence without the benefit of expert testimony and erred in dividing the value of the marital residence in equal proportions.  After careful review, we affirm.

Husband and Wife married on October 5, 1985.  It was Husband's first marriage and Wife's second marriage; Wife's first marriage ended after the death of her first husband.  Husband and Wife were married for twenty-two years until Husband moved out of the marital home on June 5, 2008.  Wife continues to live at the marital home, which is located in Shickshinny,

---

[*] Former Justice specially assigned to the Superior Court.

Pennsylvania. Husband and Wife do not have any children together. Wife has an adult daughter from her previous marriage.

On December 29, 2010, Husband filed a complaint in divorce. On January 18, 2011, Wife filed an answer and a counterclaim, seeking *inter alia*, equitable distribution, alimony, and alimony *pendente lite*.[1] After the trial court appointed a special master and the parties were granted numerous continuances, the parties convened for a hearing before the divorce master on December 19, 2016.

At the time of the master's hearing, Husband was 59 years old and Wife was 62 years old. Husband had worked for the U.S. Postal Service (USPS) for 31 years and had retired two years earlier due to a back injury. Husband has two pensions, one from USPS, and another from his time served in the military. Wife was employed at the Nanticoke Post Office and was planning to retire in the near future with her pension from USPS.

At the beginning of the master's hearing, the parties resolved all claims related to their marital property except for the equitable distribution of the marital residence, which was built in 1989 and is unencumbered by any mortgage or lien.[2] While each party submitted a written appraisal of the

_____

[1] Wife opposed the entry of a divorce decree as she asserted that the couple's marriage was not irretrievably broken.

[2] The parties waived their interest in the other spouse's retirement account and agreed to use a third investment account for their granddaughter's college fund. Wife retained a 2007 Subaru Impreza and a 2005 Dodge Neon. The parties had no marital debt.

marital residence for the master's consideration, neither party presented expert testimony in support of their appraisals.

On August 14, 2017, the Master filed a Report and Recommendation, accepting Husband's valuation of the marital residence at $156,000.00 and further recommending that this marital asset be divided equally among the parties. If Wife wished to stay in the marital residence, the master directed Wife to pay Husband $76,500.00.[3] If Wife was unable to pay this sum within ninety days, the trial court directed the parties to list the property with a mutually agreeable realtor and divide the sale proceeds.

Wife filed exceptions to the Master's Report and Recommendation. On January 26, 2018, the trial court remanded the case back to the master for an explanation as to how he reached his valuation of the marital home. On February 15, 2018, the master issued an addendum to his report in which he offered the following explanation as to why he chose to accept Husband's appraisal of the marital home over Wife's appraisal:

> At the time of the Master's hearing, the parties resolved all claims except for the equitable distribution of the marital home. Initially, as previously noted, each party offered an appraisal for the Master's consideration of the fair market value of the home for equitable distribution purposes. The appraisals were submitted without objection. Neither party offered any accompanying expert testimony from the appraisers. Rather, each party briefly testified regarding his or her observations of the condition of the home.

---

[3] The parties agreed that Wife would get a $1,500 credit from the equitable distribution award as a result of the parties' vehicle distribution. Notes of Testimony (N.T.), Master's Hearing, 12/19/16, at 25, 75.

The Master therefore reviewed both appraisals without the benefit of any accompanying expert testimony. Both appraisers identified 3 comparable properties and made comments on the sales comparisons. Using the sales comparison approach, Wife's appraiser concluded that the value of the property is $133,000.00. Husband's appraiser concluded that the value of the property is $156,000.00. In addition to the reports, little evidence was presented to assist the Master in determining which value to use for equitable distribution purposes.

\*\*\*

After having the opportunity to personally observe both witnesses testify, the Master found [H]usband's testimony regarding the condition of the home to be more credible. This determination was then coupled with the Master's view of the appraisals in order to ultimately conclude that [Husband's] value was more credible. The Master therefore valued the marital property at $156,000.00 and used this figure in calculating the recommended distribution award.

Addendum to Master's Report and Recommendation, 2/15/18, at 1-3. On May 9, 2018, the trial court entered an order dismissing Wife's exceptions. On June 4, 2018, Wife filed a notice of appeal.

On June 25, 2018, this Court directed Wife to show cause why the appeal should not be dismissed as interlocutory as a divorce decree was never entered. This Court indicated that an equitable distribution order is interlocutory and cannot be reviewed until it is rendered final by the entry of a valid divorce decree. *Wilson v. Wilson*, 828 A.2d 376, 377-78 (Pa.Super. 2003); Pa.R.A.P. 341(b)(1) (providing that as a general rule, an appeal will lie only from a final order that disposes of all claims and all parties). Wife failed to respond to the rule to show cause. On August 24, 2018, this Court quashed Wife's appeal.

- 4 -

The case was further delayed by Wife's reluctance to sign an affidavit to consent to the divorce. As such, the lower court reinstated the services of the master to hold a hearing on the issue of grounds for divorce. Immediately before the hearing, on April 19, 2019, Wife presented a signed Affidavit of Consent to the Divorce, an Affidavit of Waiver of Marriage Counseling, and a Waiver of Notice of Intention to Request Entry of a Divorce Decree.

As a result, the master recommended the trial court enter a divorce decree on the grounds of mutual consent pursuant to Section 3301(c) of the Divorce Code. 23 Pa.C.S.A. § 3301(c). On April 26, 2019, the lower court entered the divorce decree, and Wife filed this timely appeal. After the trial court directed Wife to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), Wife filed a concise statement containing twenty-one issues for review on appeal.

In her brief, Wife raises the following issues for review on appeal:

1. Did the trial court err and/or abuse its discretion in accepting the credibility determination of the Master in Divorce of the real estate appraisers without their oral testimony?

2. Did the trial court abuse its discretion or commit an error of law where it appears from a review of the record that there is inadequate evidence to support the Master in Divorce's findings?

3. Did the trial court abuse its discretion or commit an error of law in accepting the Master's recommendation of a 50%/50% [sic] of the value of the marital real estate without consideration of the factors set forth in Section 3502(a) of the Pennsylvania Divorce Code?

Wife's Brief, at 13-14.

Our standard of review is as follows:

When reviewing an order of equitable distribution, "our standard of review is limited, and we will not disturb the trial court's decision absent an abuse of discretion or error of law which is demonstrated by clear and convincing evidence." *Gilliland v. Gilliland*, 751 A.2d 1169, 1171 (Pa.Super. 2000) (citation omitted). Additionally, … a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties. *Simeone v. Simeone*, [] 551 A.2d 219, 225 ([Pa.Super.] 1988).

*Moran v. Moran*, 839 A.2d 1091, 1095 (Pa.Super. 2003).

Wife first argues that the trial court abused its discretion in accepting the credibility determinations of the divorce master with respect to the proper valuation of the marital residence. Specifically, Wife argues that the master could not find Husband's appraisal more credible than Wife's appraisal as parties' valuations were submitted without expert testimony. Further, Wife claims that she was denied the "opportunity to vindicate th[e] essential right" to present expert testimony in support of her claim. Wife's Brief, at 17.

However, Wife had been informed that she was responsible for securing the presence of any and all witnesses that she desired to testify at the master's hearing. Due to the fact that the master's hearing was continued multiple times at the parties' request, the master sent the parties numerous notices that specifically advised the parties of the following:

[t]he purpose of the Master's Hearing is to take testimony concerning the claims for which the Master has been appointed so that the Master may submit a report and recommendation to the

court; the parties should accordingly be prepared to present any and all witnesses and evidence to support their claims.

Notice of Master's Hearing, 4/7/16, at 2; Notice of Master's Hearing, 9/30/16, at 2, Notice of Master's Hearing, 11/14/16, at 2; Notice of Master's Hearing, 12/7/16, at 2.

Despite the repeated notices that she was required to present all witnesses to support her claims, Wife did not secure the presence of an expert to testify in support of her valuation of the marital residence. At the master's hearing, both parties admitted their appraisals as exhibits without expert testimony and without objection, agreed to proceed in this manner. Wife cannot now blame the master and the trial court for reaching their decisions without evidence that she failed to present at the master's hearing.

Moreover, Wife offers no authority for her suggestion that it was improper for the master to assess a value for the marital residence without expert testimony. In reviewing the lower court's decision to adopt the divorce master's valuation, we are mindful of the following:

> "[T]he Divorce Code does not set forth a specific method or valuing assets, and consistent with our standard of review, the trial court is afforded great discretion in fashioning an equitable distribution order which achieves economic justice." **Carney** [**v. Carney**,] 167 A.3d [127,] 131 [(Pa.Super. 2017)] (citation omitted). "In valuing marital assets, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties." **Id.** (quotation marks, brackets, and citation omitted). However, "[t]he trial court may accept all, part, or none of the evidence regarding valuation of marital property, and it may rely on its own valuation method." **Brubaker** [**v. Brubaker**], 201 A.3d [180,] 185 [(Pa.Super. 2018)].

*Llaurado v. Garcia-Zapata*, 223 A.3d 247, 254 (Pa.Super. 2019).

As noted above, the parties each submitted a written appraisal of the value of the marital residence that included detailed information about the home's area, features, amenities, and condition. Both appraisals compared the pertinent information for marital residence to three similar properties in the surrounding area and contained comments from the appraisers on the comparisons. The parties chose not to offer accompanying expert testimony from the appraisers.

Instead, Husband and Wife each testified regarding their observations of the condition of the home. Husband was able to describe the house's features in detail, indicated that he maintained the home throughout the marriage, and opined that the condition of the home was excellent. Husband offered an uncontested estimate that the home's monthly rental value was $1,200 to $1,500. N.T., 12/19/16, at 33-38.

Wife testified that she resided in and maintained the home after the parties' separation. Wife asserted that the home needed a new roof.[4] However, the master found that Husband credibly testified that he gave

_____

[4] While Husband asserted a claim for the rental value of the marital property as Wife had remained in the home continuously for eight years at the time of the master hearing, the master declined this request. The master cited this Court's decision in *Schneeman v. Schneeman*, 615 A.2d 1369, 1377 (Pa.Super. 1992), which states that "[w]hile each party is entitled to his or her equitable share of marital property, including the fair rental value of the marital residence, the trial court need not compute that equitable share as a credit to the non-possessory spouse, as long as the total distributory scheme is equitable. *Id*.

$11,000 to Wife to be allocated for a new roof, and Wife never had the new roof installed. Wife did not contest this testimony or offer details on her specific costs in maintaining the home. N.T., 12/19/16, at 54-67.

After reviewing the master's decision to accept Husband's valuation for the marital residence, the trial court agreed that Husband's appraisal was more accurate as the "comparables used by Husband [] were appropriate in relation to the subject real estate." Trial Court Opinion, 7/5/19, at 6. Moreover, the trial court deferred to the master's finding that Husband gave more credible testimony regarding the condition of the home. We cannot overturn the master's credibility findings when they are supported by record evidence. We conclude that the trial court did not abuse its discretion in adopting the master's report, recommendation, and credibility findings.

Wife also claims that the trial court abused its discretion in accepting the master's recommendation to divide the marital estate equally and in failing to adequately consider two of the relevant statutory factors in the Divorce Code. *See* 23 Pa.C.S.A. 3502(a)(1)-(11).

Our review of the equitable distribution award is guided by the following principles:

> [w]hen determining the propriety of an equitable distribution award, this Court must consider the distribution scheme as a whole. *Mundy v. Mundy*, 151 A.3d 230, 236 (Pa. Super. 2016). "We do not evaluate the propriety of the distribution order upon our agreement with the court's actions nor do we find a basis for reversal in the court's application of a single factor. Rather, we look at the distribution as a whole in light of the court's overall application of the 23 Pa.C.S.[ ] § 3502(a) factors for consideration in awarding equitable distribution. If we fail to find an abuse of

- 9 -

discretion, the order must stand." ***Harvey v. Harvey***, 167 A.3d 6, 17 (Pa. Super. 2017) (citation and internal brackets omitted). Finally, "it is within the province of the trial court to weigh the evidence and decide credibility and this Court will not reverse those determinations so long as they are supported by the evidence." ***Brubaker*** [***v. Brubaker***], 201 A.3d [180,] 184 [(Pa.Super. 2018)] (citation omitted).

***

[Moreover,] "[a] trial court has broad discretion when fashioning an award of equitable distribution." [***Id***.] at 184 (citation omitted). "In making its decision regarding equitable distribution, the trial court must consider at least the eleven factors enumerated in 23 Pa.C.S.[ ] § 3502(a)." ***Isralsky v. Isralsky***, 824 A.2d 1178, 1191 (Pa. Super. 2003). However, there is no standard formula guiding the division of marital property and the "method of distribution derives from the facts of the individual case." ***Wang v. Feng***, 888 A.2d 882, 888 (Pa. Super. 2005) (citation omitted).

While the list of factors in Section 3502 serves as a guideline for consideration, the list is "neither exhaustive nor specific as to the weight to be given the various factors." ***Id.*** (citation omitted). Accordingly, "the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions." ***Id.*** (citation omitted).

***Hess v. Hess***, 212 A.3d 520, 523-24 (Pa.Super. 2019).

As noted above, the trial court must consider the following relevant factors in Section 3502 of the Divorce Code in seeking to distribute marital property in an equitable manner:

### § 3502. Equitable division of marital property

(a) General rule.--Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties without regard to marital misconduct in such percentages and in such manner as the court deems just after considering all relevant factors. The court may consider each marital asset or group of assets independently and apply a different percentage to each marital asset or group of assets. Factors which are relevant to the equitable division of marital property include the following:

- 10 -

(1) The length of the marriage.

(2) Any prior marriage of either party.

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties.

(4) The contribution by one party to the education, training or increased earning power of the other party.

(5) The opportunity of each party for future acquisitions of capital assets and income.

(6) The sources of income of both parties, including, but not limited to, medical, retirement, insurance or other benefits.

(7) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker.

(8) The value of the property set apart to each party.

(9) The standard of living of the parties established during the marriage.

(10) The economic circumstances of each party at the time the division of property is to become effective.

(10.1) The Federal, State and local tax ramifications associated with each asset to be divided, distributed or assigned, which ramifications need not be immediate and certain.

(10.2) The expense of sale, transfer or liquidation associated with a particular asset, which expense need not be immediate and certain.

(11) Whether the party will be serving as the custodian of any dependent minor children.

23 Pa.C.S.A. § 3502(a).

Specifically, Wife asserts that the master and trial court failed to consider the length of the parties' marriage (22 years) and the fact that Wife

- 11 -

was responsible for the maintenance of the marital home after the parties' separation. Wife does not discuss the equitable distribution scheme as a whole, but simply asserts that she should have been awarded the greater part of the marital estate based on these two factors.

The trial court noted that the master thoroughly analyzed all of the relevant factors listed in Section 3502(a) and his report specifically discussed the length of the parties' marriage and Wife's contribution to the preservation of the marital home. As the record supports the master's findings with respect to the Section 3502(a) factors, we conclude that the trial court did not abuse its discretion in adopting the master's recommendation and distribution scheme.

For the foregoing reasons, we affirm.

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/31/2020